**Richard V. PAULSON and Glorialee Paulson, individually and as trustees of Richard V. Paulson Family Trust and Glorialee Paulson Family Trust, Plaintiffs,**

v.

**DEAN WITTER REYNOLDS, INC., a Delaware corporation, American Insurance Company, a California corporation, Richard Allen, and Robert H. Kehrli, Defendants.**

**Civ. No. 88–860–FR.**

United States District Court,
D. Oregon.

March 6, 1989.

David J. Sweeney, Paul G. Dodds, Gilbertson, Brownstein, Rask, Sweeney, Kerr & Grim, Portland, Or., for plaintiffs.

Thomas V. Dulcich, Regina Hauser, Schwabe, Williamson & Wyatt, Portland, Or., for defendants.

## OPINION

FRYE, District Judge:

In the matter before the court, plaintiffs, Richard V. Paulson and Glorialee Paulson, individually and as trustees of the Richard V. Paulson Family Trust and Glorialee Paulson Family Trust (the Paulsons), move the court for reconsideration of this court's opinion and order of December 20, 1988 granting the motion of defendants, Dean Witter Reynolds, Inc. (Dean Witter), American Insurance Company, Richard Allen, and Robert H. Kehrli, to compel arbitration with respect to the Paulsons' claims of violations of federal and pendent state securities law and common law claims.

## BACKGROUND

On October 10, 1985, the Paulsons signed an "Active Assets Account Agreement" for an individual account which allowed Dean Witter to trade for them on margin and allowed First Jersey National Bank to issue fund shares on those accounts. The Active Assets Account Agreement provided that "all controversies which may arise between us concerning any transactions or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date below" shall be subject to arbitration. The Active Assets Account Agreement further provided that:

This agreement to arbitrate does not apply to any controversy between us for which a remedy exists pursuant to a right of action under the federal securities laws, unless you and I agree to arbitration after the date the controversy arises. Then, if we jointly agree to arbitrate, the terms of the agreement to arbitrate shall be applied.

On the same date as they signed the Active Assets Account Agreement, the Paulsons signed an "Options Trading Agreement," which appeared on the reverse side of the Active Assets Account Agreement. The Options Trading Agreement provided that:

Any controversy between us arising out of or relating to this agreement or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the American Arbitration Association, the Board of Arbitration of the New York Stock Exchange, the American Stock Exchange, the Chicago Board Options Exchange, or the National Association of Securities Dealers Inc. as I may elect. If I do not make such election by registered mail addressed to you at your main office within five (5) days after receipt of notification from you requesting such election, then I authorize you to make such election in my behalf.

. . . .

All other agreements existing between us or hereafter made which by their terms apply to all accounts of mine with you shall be applicable to my options account or accounts where they are not in conflict with this agreement. Should a conflict exist it shall be resolved in favor of this agreement. Otherwise, the provisions of each agreement shall be applicable.

In its previous opinion, this court determined that the more specific language of the Options Trading Agreement controls the claims in the Paulsons' complaint because those claims relate to options trading. *Paulson v. Dean Witter Reynolds, Inc.,* Civ. No. 88–860–FR, p. 7, 1988 WL 141562 (D. Or. December 20, 1988). The court found that "[t]he more general language in the arbitration provision of the Active Assets Account Agreement, which excepts from arbitration claims under federal law, does not control the parties' specific commitment to resolve disputes arising out of options trading by arbitration." *Id.* The court granted defendants' motion to compel arbitration because the arbitration provision in the Options Trading Agreement covers all controversies arising out of that agreement. The Paulsons now move for reconsideration on the grounds that recent decisions in the Ninth Circuit and in this district preclude enforcement of

arbitration agreements made in violation of former Securities and Exchange Commission (SEC) Rule 15c2–2.

## DISCUSSION

In *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), the United States Supreme Court determined that agreements to arbitrate claims under the Securities Act of 1934 are enforceable pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–14. In *McMahon*, plaintiffs, the McMahons, were customers of defendant Shearson/American Express, Inc. (Shearson), a brokerage firm registered with the Securities and Exchange Commission (SEC), between 1980 and 1982. The McMahons sued in federal district court for violations of the antifraud provisions in section 10(b) of the SEC Act of 1934, SEC Rule 10b–5, and the Racketeer Influenced and Corrupt Organizations Act (RICO). Shearson moved to compel arbitration of the claims pursuant to two customer agreements signed by Julia McMahon which provided for arbitration of any controversy relating to the accounts of the McMahons maintained with Shearson.

In holding the McMahons' agreements to arbitrate claims under the SEC Act of 1934 enforceable, the Court stated that the Arbitration Act establishes a " 'federal policy favoring arbitration.' " *McMahon*, 107 S.Ct. at 2337, quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). The Court went on to distinguish *McMahon* from its earlier decision in *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953).

In *Wilko*, the Court held that a predispute agreement could not be enforced to compel arbitration of a claim arising under section 12(2) of the Securities and Exchange Act of 1933. The *McMahon* court stated that "[t]he conclusion in *Wilko* was expressly based on the Court's belief that a judicial forum was needed to protect the substantive rights created by the Securities Act" of 1933. *McMahon*, 107 S.Ct. at 2338. The Court concluded that *"Wilko* must be

read as barring waiver of a judicial forum only where arbitration is inadequate to protect the substantive rights at issue." *Id.* 107 S.Ct. at 2339.

The *McMahon* court noted that in 1953, when *Wilko* was decided, the Securities and Exchange Commission had no authority over rules of arbitration. As a result, the Court stated, a mistrust of arbitration formed the basis of the *Wilko* opinion, and this mistrust "is difficult to square with the assessment of arbitration that has prevailed since that time." *McMahon*, 107 S.Ct. at 2341. Although the Court did not expressly overrule *Wilko*, the Court refused to extend *Wilko* to claims under the SEC Act of 1934.

In *Staiman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 673 F.Supp. 1009 (C.D. Cal.1987), the United States District Court relied on *McMahon* to compel arbitration of plaintiff Staiman's federal securities law claims under both the 1933 and 1934 Acts where Staiman had signed four standard customer agreements compelling arbitration of any controversy between the parties. The court stated that "[a]lthough *McMahon* did not involve a 1933 Act claim, and the Court did not expressly overturn *Wilko*, it appears to this court that *McMahon* so seriously undermined *Wilko's* rationale that Staiman's 1933 Act claims, like his other claims, must be sent to arbitration." *Staiman*, 673 F.Supp. at 1011.

In their motion for reconsideration, the Paulsons call this court's attention to SEC Rule 15c2–2. Rule 15c2–2 was in effect from November 28, 1983 to October 15, 1987. Rule 15c2–2 provided that:

> [i]t shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the Federal Securities laws, or to have in effect such an agreement, pursuant to which it effects transactions with or for a customer.

17 C.F.R. § 240.15c2–2. The Paulsons signed both the Active Assets Account Agreement and the Options Trading Agree-

ment on October 10, 1985, when Rule 15c2–2 was in effect.

Case law in the area of the enforceability of predispute arbitration agreements is presently in flux. *McMahon, supra,* held that claims under the 1934 Act are arbitrable if the parties have agreed to arbitrate those claims. The *McMahon* Court did not expressly overrule *Wilko, supra,* which held that predispute agreements requiring arbitration of claims under the 1933 Act are unenforceable. The *McMahon* Court noted that Rule 15c2–2 " '[was] premised on the Commission's assumption ... that agreements to arbitrate Rule 10b–5 claims were not, in fact, arbitrable.' " *McMahon,* 107 S.Ct. at 2341 n. 3, quoting Brief for the Securities and Exchange Commission. The United States Supreme Court has not, however, ruled on the issue of whether agreements to arbitrate federal securities law claims signed during the time that Rule 15c2–2 was in effect are enforceable. This is the issue now before this court.

In *Cohen v. Wedbush, Noble, Cooke, Inc.,* 841 F.2d 282 (9th Cir.1988), the Ninth Circuit determined that where the plaintiffs brought claims of breach of fiduciary duty, breach of contract, and breach of the covenant of good faith and fair dealing they were bound by a margin agreement which provided that " 'all controversies which may arise ... concerning any transaction or the construction, performance or breach of this ... agreement ... shall be determined by arbitration....' " *Id.* at 284. The court summarily rejected the argument that the arbitration provision was unenforceable because it violated Rule 15c2–2. *Id.* at 288.

In *Gugliotta v. Evans & Co.,* 690 F.Supp. 144 (E.D.N.Y.1988), the United States District Court held that an agreement to arbitrate all claims except those for which federal securities laws provide an express right of action was unenforceable against plaintiffs' claims under the 1933 Act where plaintiffs entered into the agreement while Rule 15c2–2 was in effect. The court found that the defendant broker had violated Rule 15c2–2 because the agreement gave the impression that federal se-

curities law claims with an implied right of action had to be arbitrated. The court stated that where a broker flouted a valid SEC regulation "[n]either the Supreme Court's decision in *McMahon* nor the ensuing rescission of Rule 15c2–2 make such an agreement enforceable." *Id.* at 148.

The Paulsons call this court's attention to the recent Ninth Circuit decision in *Van Ness Townhouses v. Mar Indus. Corp.,* 862 F.2d 754 (9th Cir.1988), amended slip op. January 24, 1989. In *Van Ness,* the Ninth Circuit considered the issue of the enforceability of arbitration provisions signed while Rule 15c2–2 was in effect. The Ninth Circuit held that there was no enforceable arbitration agreement where a brokerage's standard customer account agreement expressly excluded federal securities law claims from arbitration. The *Van Ness* decision did not specifically address arbitration agreements which violated SEC Rule 15c2–2, but the court stated that "[i]t cannot be doubted that Rule 15c2–2 was intended to prohibit predispute agreements to arbitrate securities claims under both the 1933 and 1934 Acts." *Id.* at 757. The court also stated that the parties never agreed to arbitrate these claims and could not do so under the law existing at the time they signed the arbitration agreement. *Id.* at 757.

Dean Witter argues that *Van Ness* has no application in the present action because the language of the Options Trading Agreements does not exclude federal claims as did the agreement in *Van Ness.* However, the Honorable James A. Redden has interpreted *Van Ness* to cover *all* arbitration provisions that were executed when Rule 15c2–2 was in effect. *Wehe v. Montgomery,* 711 F.Supp. 1035 (D. Or.1989). In *Wehe,* the court relied on *Van Ness* to deny the defendants' motion to stay proceedings pending arbitration where the plaintiffs who had signed a customer agreement containing an arbitration clause brought claims based on the 1933 and the 1934 Securities Acts. The court determined that "*Van Ness* makes it clear that any provision purporting to bind a customer to arbitration of federal securities claims that

were executed while Rule 15c2–2 was in force is simply unenforceable." *Wehe* at 9.

In light of *Van Ness* and *Wehe*, both *supra*, this court finds that any provision executed while Rule 15c2–2 was in effect and which purports to bind a customer to arbitration of federal securities claims is unenforceable. Thus, the court finds it appropriate to reconsider and modify its opinion and order of December 20, 1988.[1]

## CONCLUSION

The Paulsons' motion for reconsideration (# ) of the order requiring arbitration of their federal securities law claims is granted. The Paulsons' claims under the federal securities laws are not arbitrable and will proceed in this court. The Paulsons' claims under Oregon statutes and the common law remain arbitrable. The court will not modify the portions of its opinion and order dated December 20, 1988 which require arbitration of those claims.

---

1. The Paulsons also cite *Seres v. Drexel Burnham Lambert, Inc.*, Civ. No. 88–628–PA, —— F.Supp. —— (D. Or. October 31, 1988), in support of their contention that section 12(2) claims are not arbitrable. The Paulsons' section 12(2) claims are federal securities law claims under the 1933 Act, which are covered by the *Van Ness* and *Wehe* decisions, both *supra*. This court need not consider the Paulsons' arguments for reconsideration under the *Seres* case.

The Paulsons also contend that they received revised Option Client Information forms from Reynolds periodically after signing the original Options Trading Agreements. The court's ruling above makes it unnecessary to address the issue of the possible binding effect of the revised Option Client Information forms.

In their motion for reconsideration, the Paulsons ask this court, in the alternative, to stay proceedings in this action if arbitration is ordered. Since this court has granted the Paulsons' motion for reconsideration of their federal claims, their motion to stay proceedings is rendered moot.