891 F.2d 261
 Fed. Sec. L. Rep. P 94,844
Florabelle COFFEY, Plaintiff-Appellant,
v.
DEAN WITTER REYNOLDS, INC., a Delaware corporation, Defendant-Appellee,
Jeffrey HINES, an individual, Defendant-Appellee,
v.
L. Irving COFFEY, Third-Party-Defendant.
 No. 88-2286.
 United States Court of Appeals,
Tenth Circuit.
 Dec. 5, 1989.
 
 Richard K. Rufner and Sergiu L. Herscovici, Denver, Colo., for plaintiff-appellant.
 William G. Imig and Neal S. Cohen of Ireland, Stapleton, Pryor & Pascoe, Denver, Colo., for defendant-appellee.
 Before LOGAN, SEYMOUR and BALDOCK, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 Plaintiff Florabelle Coffey brought suit under § 10(b) of the Securities Exchange Act of 1934 (Exchange Act), 15 U.S.C. § 78j(b), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against defendants Dean Witter Reynolds, Inc. (Dean Witter) and Jeffrey Hines, a Dean Witter account executive.[1] Defendants moved to compel arbitration of the federal claims, but the trial court denied the motion based on Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) (agreements to arbitrate federal securities claims void under Securities Act of 1933), overruled, Rodriguez de Quijas v. Shearson/American Express, Inc., --- U.S. ----, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); and Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Moore, 590 F.2d 823 (10th Cir.1978) (agreements to arbitrate federal securities claims also void under Exchange Act). 640 F.Supp. 874. Defendants then appealed to this court. We remanded the case to the trial court for reconsideration in light of the Supreme Court's intervening decision in Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), which overruled Moore and upheld agreements to arbitrate federal securities claims under the Exchange Act.[2]
 
 
 2
 On remand, the district court compelled arbitration of Coffey's 10b-5 claims and subsequently confirmed an arbitral award in favor of both defendants. Coffey appeals from this order and asserts in the alternative that (1) no agreement to arbitrate existed between the parties, and (2) if an arbitration agreement existed, it was modified by operation of SEC Rule 15c2-2, 17 C.F.R. § 240.15c2-2, rescinded, 52 Fed.Reg. 39,216 (effective October 21, 1987).
 
 
 3
 * Our threshold inquiry is whether the parties agreed to arbitrate the claims at issue. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). An agreement to arbitrate is nothing more than a contract fashioned by the parties in accordance with their intentions. If the parties intended to arbitrate the relevant claims, we must enforce the agreement under the Federal Arbitration Act, 9 U.S.C. §§ 1-14, unless "legal constraints external to the parties' agreement foreclose[ ] the arbitration of those claims." Mitsubishi, 473 U.S. at 628, 105 S.Ct. at 3354.
 
 
 4
 In conducting this inquiry, we are mindful that under the Federal Arbitration Act "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-42, 74 L.Ed.2d 765 (1983) (footnote omitted). The Act, however, "does not require parties to arbitrate when they have not agreed to do so, nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement." Volt Information Sciences, Inc. v. Board of Trustees, --- U.S. ----, ----, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989) (citations omitted).
 
 
 5
 On April 28, 1983, Coffey executed a Customer's Agreement in connection with a Dean Witter commodity account, which provided in relevant part as follows:
 
 
 6
 "16. Any controversy between you [Dean Witter] and the undersigned [Coffey] arising out of or relating to this contract or the breach thereof, shall be settled by arbitration....
 
 
 7
 17. This agreement ... and its provisions shall be continuous; shall cover individually and collectively all accounts which the undersigned may open or re-open with you...."
 
 
 8
 Pl. ex. 3 at 1.
 
 
 9
 On October 3, 1984, Coffey and her husband executed a Joint Account Agreement With Right of Survivorship ("Joint Account Agreement") in connection with a differently numbered stock account. The Joint Account Agreement did not contain an arbitration clause, and Coffey did not sign a new Customer's Agreement. The Joint Account Agreement is not inconsistent with the Customer's Agreement Coffey had already signed, which treats many aspects not covered by the Joint Account Agreement. Indeed, the Customer's Agreement expressly contemplates that it will apply whether the securities are carried "either individually or jointly with others." Id. p 5. And the Joint Account Agreement provides that "[i]f the undersigned [Coffey and her husband] sign and deliver to you [Dean Witter] a Customer's Agreement ..., [it is] intended to cover, in addition to the provisions hereof, the terms on which the joint account is to be carried." Pl. ex. 2. Because Coffey already had signed a Customer's Agreement that covered "all accounts" she might thereafter open, no new agreement was necessary to bind her.[3] Thus, because we have no evidence to the contrary, we hold that Coffey and Dean Witter intended the arbitration clause in the Customer's Agreement to apply to claims by Coffey arising under the joint account.
 
 II
 
 10
 Coffey next argues that even if the arbitration clause in her Customer's Agreement applies to claims under the joint account, SEC Rule 15c2-2 modified the agreement to arbitrate. Paragraph 2 of the Customer's Agreement provides that "whenever any rule or regulation shall be prescribed or promulgated by ... the Federal Securities and Exchange Commission, ... which shall affect in any manner or be inconsistent with any of the provisions hereof, the provisions of this agreement so affected shall be deemed modified or superseded."
 
 Rule 15c2-2 provided as follows:
 
 11
 "(a) It shall be a fraudulent, manipulative or deceptive act or practice for a broker or dealer to enter into an agreement with any public customer which purports to bind the customer to the arbitration of future disputes between them arising under the Federal securities laws, or to have in effect such an agreement, pursuant to which it effects transactions with or for a customer.
 
 
 12
 (b) Notwithstanding paragraph (a) of this section, until December 31, 1984 a broker or dealer may use existing supplies of customer agreement forms if all such agreements entered into with public customers after December 28, 1983 are accompanied by the separate written disclosure:
 
 
 13
 Although you have signed a customer agreement form with FIRM NAME that states that you are required to arbitrate any future dispute or controversy that may arise between us, you are not required to arbitrate any dispute or controversy that arises under the Federal securities laws but instead can resolve any such dispute or controversy through litigation in the courts.
 
 
 14
 (c) A broker or dealer shall not be in violation of paragraph (a) of this section with respect to any agreement entered into with a public customer prior to December 28, 1983 if:
 
 
 15
 (1) Any such public customer for whom the broker or dealer has after July 1, 1983 (i) carried a free credit balance, or (ii) held securities for safekeeping or as collateral, or (iii) effected a securities transaction is sent, no later than December 31, 1984, the disclosure prescribed in paragraph (b) of this section; or
 
 
 16
 (2) Any other public customer is sent upon the completion of his next transaction pursuant to such agreement, the disclosure prescribed in paragraph (b) of this section."
 
 
 17
 Under this rule, Dean Witter was required to send a written disclosure to Coffey informing her of the right to a judicial forum for adjudication of any federal securities claims in spite of the arbitration clause in the Customer's Agreement. The question, then, is whether this written disclosure, although based on a view of the law that no longer prevails, precludes arbitration of Coffey's Exchange Act claims over her objection. Relevant to our decision is that Rule 15c2-2 was rescinded after the instant suit was filed but before the district court's decision on remand.
 
 
 18
 We recognize that some circuits have applied the rescission of Rule 15c2-2 retroactively, paying little or no attention to the contractual modifications and resultant changed expectations effected during the life of the Rule. See Jeske v. Brooks, 875 F.2d 71 (4th Cir.1989); Adrian v. Smith Barney, Harris, Upham & Co., 841 F.2d 1059 (11th Cir.1988); Villa Garcia v. Merrill Lynch, Pierce, Fenner and Smith Inc., 833 F.2d 545 (5th Cir.1987). The strongest argument in support of these decisions appears to be "the usual rule that 'federal cases should be decided in accordance with the law existing at the time of the decision,' " Jeske, 875 F.2d at 75 (quoting Saint Francis College v. Al-Khazraji, 481 U.S. 604, 608, 107 S.Ct. 2022, 2025, 95 L.Ed.2d 582 (1987)), unless "injustice" would result thereby, id.; see also Villa Garcia, 833 F.2d at 548 ("manifest injustice" would justify an exception to the "usual rule of retroactivity"). In Jeske, the court concluded that no injustice would result from retroactive application of the rule's rescission because (1) the plaintiff signed the customer agreement at issue before the SEC's adoption of the rule, and so could not have relied on the rule in signing the agreement; and (2) the court found no evidence to indicate that the plaintiff "would not have signed the agreement if he had foreseen that his securities claims would be arbitrable." Id.
 
 
 19
 Both of the Jeske court's observations are equally applicable to the Customer Agreement that Coffey signed in October 1983, the arbitration provision of which applies to the Joint Account Agreement under which Coffey now sues. But that arbitration provision did not comply with Rule 15c2-2, and Dean Witter was therefore required to notify Coffey of her right to litigate federal securities law claims. Because the rule required explicit modification of the parties' contract, narrow focus on Coffey's expectations at the time the Customer's Agreement or the Joint Account Agreement was signed is insufficient.
 
 
 20
 We are more persuaded by the reasoning of those courts which have treated the effect of Rule 15c2-2's requirements, and of the rule's rescission, from a private contractual rather than a public regulatory perspective. See Ballay v. Legg Mason Wood Walker, Inc., 878 F.2d 729 (3d Cir.1989); Gooding v. Shearson Lehman Bros., Inc., 878 F.2d 281 (9th Cir.1989). In Ballay, plaintiffs signed customer agreements with Legg Mason that contained a broad arbitration provision and the qualification that "this arbitration provision is not binding upon me in any dispute or controversy that arises under the federal securities laws, and, in such cases, I may seek resolution through litigation in the courts." Id. at 731 n. 1.
 
 
 21
 Legg Mason argued that this clause "did not reflect a bargained-for term of the contract but rather was included merely to comply with SEC [Rule 15c2-2]." Id. at 734. In response, the court concluded that
 
 
 22
 "the unequivocal exclusionary language in plaintiffs' arbitration agreements creates a contractual right to litigate plaintiffs' [federal securities law] claims. The language admits of no justification for looking beyond it to the regulatory history surrounding its inclusion. In any event, even if we were to look at the regulatory background we see no reason in it for rejecting customers' reasonable expectations. A customer reading the exclusionary language could not be expected to be aware of the regulatory background or to understand that the language may become meaningless with the winds of change in the law. Legg Mason, if it truly did not intend to be bound by the contractual language it drafted, should have challenged Rule 15c2-2 or reexecuted the arbitration agreements in accordance with its intent after rescission of the Rule."
 
 
 23
 Id.
 
 
 24
 In Gooding, the arbitration provision at issue was limited by a clause excluding arbitration of "any controversy ... for which a remedy may exist pursuant to an express or implied right of action under certain of the federal securities laws." 878 F.2d at 283. The broker urged that since this language "was placed in the ... agreement to satisfy Rule 15c2-2, it should not be enforced because the rule has been rescinded." Id. Relying on its earlier decision in Van Ness Townhouses v. Mar Industries Corp., 862 F.2d 754, 758 (9th Cir.1989), which found that "such an express exclusion from arbitration is an express grant of the right to litigate those claims," the court rejected the broker's argument. "Under the contract, [the broker] agreed that [the customer] had the option of seeking a judicial determination of his federal securities law claims ...," id. at 284, and "[b]oth parties must abide by the terms of the contract," id.
 
 
 25
 We find the reasoning of Ballay and Gooding persuasive and applicable to the case at bar. Although the record does not disclose whether Dean Witter actually sent the required notice to Coffey, that uncertainty does not affect our disposition of the case. If the notice was sent, it became part of the parties' contract, creating a new (albeit unbargained-for) contractual right to litigate federal securities law claims. See also Wehe v. Montgomery, 711 F.Supp. 1035 (D.Or.1989) (notice sent to customer in compliance with Rule 15c2-2 modified unconditional arbitration clause; thus, customer's Exchange Act claims not subject to arbitration even after rule's rescission).
 
 
 26
 In this situation, like the Ballay court, we see no reason to defeat Coffey's reasonable expectation, based on the clear, unequivocal language of the Rule 15c2-2-mandated modification of the arbitration clause, that she could litigate federal securities law claims under the joint account. At the time Coffey commenced the instant litigation Rule 15c2-2 was in effect. The notice required by Rule 15c2-2 added a new paragraph to the parties' contract. This substitute paragraph does not declare that it is effective only until such claims are held to be arbitrable. The substitute language does not automatically become ineffective when the Supreme Court changes its view of the law on securities arbitrations nor, we believe, upon repeal of the rule which dictated the substitute language, absent a new agreement between Dean Witter and Coffey.[4]
 
 
 27
 If Dean Witter never sent the required notice, its action constituted a violation of Rule 15c2-2 and we will not allow it to profit from its transgression. See Paulson v. Dean Witter Reynolds, Inc., 708 F.Supp. 1163, 1167 (D.Or.1989) ("[A]ny provision executed while Rule 15c2-2 was in effect and which purports to bind a customer to arbitration of federal securities claims is unenforceable."); Wehe v. Montgomery, 711 F.Supp. 1035, 1039 (D.Or.1989) (same); Gugliotta v. Evans & Co., 690 F.Supp. 144, 147-49 (E.D.N.Y.1988) (arbitration clause which violated Rule 15c2-2 when rule was in effect would not be enforced after rule's rescission; "[o]n the contrary, 'an agreement that is illegal by statute or on the grounds of public policy when made is not rendered legal by repeal of the statute or change in the public or legislative policy.' Palmisano v. United States Brewing Co., 131 F.2d 272, 273 (10th Cir.1942)"). We reject those cases which, by retroactive application of Rule 15c2-2's rescission, have immunized brokers from responsibility for possible violations of the rule while it was in effect. See, e.g., Adrian, 841 F.2d at 1061-62 (court did not consider plaintiffs' argument that arbitration clause violated Rule 15c2-2 because "whatever effect Rule 15c2-2 may have had before its rescission, it can no longer be used as a defense to arbitration"); Villa Garcia, 833 F.2d at 548 ("[S]ince the rescission of the Rule should be applied retroactively, we have no occasion to consider whether Merrill Lynch did or did not violate the Rule as Villa contends.").[5]
 
 
 28
 The approach which we adopt today does not ignore violation of valid regulations, and protects customers' reasonable expectations based on explicit contractual provisions.
 
 
 29
 Thus, we REVERSE the district court's order confirming the arbitral award and dismissing the case and REMAND for further proceedings not inconsistent with this decision.
 
 
 30
 BALDOCK, Circuit Judge, concurring in part and dissenting in part.
 
 
 31
 I concur with the court's decision that the parties agreed to arbitrate the claims at issue, but I differ with the court concerning whether plaintiff-appellant may avoid that agreement based upon Rule 15c2-2, 17 C.F.R. § 240.15c2-2 (1987).
 
 
 32
 First, Rule 15c2-2 was a disclosure provision designed to inform customers that under the then-current law, federal securities claims could be litigated despite a predispute agreement to arbitrate. Recourse to the Courts Notwithstanding Arbitration Clauses in Broker-Dealer Customer Agreements, Exchange Act Release No. 20,397, Nov. 18, 1983, 48 Fed.Reg. 53,404 (1983). As explained by the SEC:
 
 
 33
 The Commission is adopting a rule that prohibits broker-dealers from using predispute arbitration clauses in customer agreements that purport to bind public customers to the arbitration of claims arising under the federal securities laws. The rule also requires broker-dealers to disclose to existing public customers that they are not precluded by such clauses from judicial recourse with respect to those claims. The purpose of this rule is to ensure that public customers are not misled concerning such recourse.
 
 
 34
 Id. The rationale for the rule was that "[t]he federal securities laws ... provide that broker-dealer agreements purporting to bind public customers to the arbitration of disputes arising in the future are void and unenforceable as applied to those laws." Id. (citing Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953)). Thus, Rule 15c2-2 did not purport to create a new substantive right barring waiver of the right to litigate federal securities law claims. See Finkle & Ross v. A.G. Becker Paribas, Inc., 622 F.Supp. 1505, 1510 (S.D.N.Y.1985). Instead, it merely required disclosure of the then-current state of the law to public customers. That exposition of the law concerning the 1934 Act was rejected in Shearson/American Express v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), and the SEC promptly rescinded its rule, believing that "Rule 15c2-2 is no longer appropriate or accurate and, accordingly, should be rescinded." Recission of Rule Governing Use of Predispute Arbitration Clauses in Broker-Dealer Customer Agreements, Exchange Act Release No. 25,034, Oct. 15, 1987, 52 Fed.Reg. 39,216-17 (1987). The Supreme Court subsequently extended McMahon to the 1933 Act and overruled Wilko v. Swan. Rodriguez de Quijas v. Shearson/American Express, --- U.S. ----, 109 S.Ct. 1917, 1920-21, 104 L.Ed.2d 526 (1989). There is nothing in the record to support this court's decision that plaintiff-appellant has a reasonable expectation in the continued application of a now incorrect view of the law.
 
 
 35
 Second, to the extent the arbitration provision in the Customer's Agreement was modified to comply with Rule 15c2-2, the modified provision was again modified when the SEC rescinded the rule. Reliance upon the court's private contractual approach to the arbitration provision would yield the same result. Paragraph 2 of the Customer's Agreement provides in pertinent part:
 
 
 36
 Whenever any statute shall be enacted which shall effect in any manner or be inconsistent with any of the provisions hereof, or whenever any rule or regulation shall be proscribed or promulgated by ... the Federal Securities and Exchange Commission ... which shall effect in any manner or be inconsistent with any of the provisions hereof, the provisions of this agreement so affected shall be modified or superseded, as the case may be, by such statute, rule or regulation, and all other provisions of the agreement and the provisions as so modified or superseded, shall in all respects continue to be in full force and effect.
 
 
 37
 Rec. vol. I, doc. 15, ex. 3. This paragraph resulted in the incorporation of Rule 15c2-2 into the contract on the effective date of the rule, December 28, 1983. See Rel. No. 20,397, 48 Fed.Reg. 53,407. On October 21, 1987, the SEC's final rule rescinding Rule 15c2-2 became effective. Rel. No. 25,034, 52 Fed.Reg. 39,216. This final rule, promulgated by the SEC, clearly affected the arbitration provision of the contract as previously amended by the required language of Rule 15c2-2. Once again the arbitration provision was modified, but this time back to its original state and all claims were subject to arbitration.
 
 
 38
 Given the strong federal policy in favor of arbitration and the highly regulated nature of securities markets, the rescission of Rule 15c2-2 should be applied to the contract and the district court's order confirming the arbitral award should be confirmed. See Jeske v. Brooks, 875 F.2d 71, 74-75 (4th Cir.1989); Adrian v. Smith Barney, Harris, Upham & Co., 841 F.2d 1059, 1061-62 (11th Cir.1988); Cohen v. Wedbush, Noble, Cooke, Inc., 841 F.2d 282, 288 (9th Cir.1988); Villa Garcia v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 833 F.2d 545, 547-48 (5th Cir.1987); contra Ballay v. Legg Mason Wood Walker, Inc., 878 F.2d 729, 733-34 (3d Cir.1989); Gooding v. Shearson Lehman Bros., 878 F.2d 281, 284 (9th Cir.1989); Van Ness Townhouses v. Mar Industries Corp., 862 F.2d 754, 758 (9th Cir.1989); Leicht v. Bateman, Eichler, Hill, Richards, Inc., 848 F.2d 130, 133-34 (9th Cir.1988). I respectfully dissent from that part of this court's opinion which holds otherwise.
 
 
 
 [1]
 Coffey also brought several pendent state law claims that were dismissed by the trial court. The arbitration of state law issues is not before us, and we express no opinion on that matter
 
 
 [2]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument
 
 
 [3]
 Nothing in the record indicates whether Coffey's husband, who was joined by Dean Witter and Hines as a third party defendant, signed a Customer's Agreement as well. Defendant's Third Party Complaint against Coffey's husband was dismissed with the rest of the action in the district court's final order of July 27, 1988. I R. tab 17
 
 
 [4]
 Certainly an arbitration provision could have been drafted that would have complied with Rule 15c2-2 and that would have mandated arbitration of federal securities law claims in the event they were held to be arbitrable. See, e.g., Reed v. Bear, Stearns & Co., 698 F.Supp. 835, 840-41 & n. 2 (D.Kan.1988) (court construed language in arbitration clause, "likely included so that the clause would comply with Rule 15c2-2," to mean that "federal securities laws claims must be submitted to arbitration when such arbitration is permitted by federal law.")
 
 
 [5]
 In Cohen v. Wedbush, Noble, Cooke, Inc., 841 F.2d 282, 288 (9th Cir.1988), a panel of the Ninth Circuit summarily concluded that, because Rule 15c2-2 had been rescinded, the argument that an arbitration provision was unenforceable because it violated the rule while the rule was in effect was "without foundation." If Cohen was intended as a holding contrary to our contract approach it has not been followed in the Ninth Circuit. In Van Ness Townhouses v. Mar Industries Corp., 862 F.2d 754 (9th Cir.1989), a different panel found that "[i]t cannot be doubted that Rule 15c2-2 was intended to prohibit predispute agreements to arbitrate securities claims ...," id. at 757, and that exclusionary clauses included to comply with the rule constitute "an express grant of the right to litigate those claims," id. at 758. Although Van Ness did not specifically address arbitration agreements which violated Rule 15c2-2, two district courts in the Ninth Circuit have relied on the case to determine that, despite Cohen, "any provision executed while Rule 15c2-2 was in effect and which purports to bind a customer to arbitration of federal securities claims is unenforceable." Paulson v. Dean Witter Reynolds, Inc., 708 F.Supp. 1163, 1167 (D.Or.1989) (Frye, J.). Accord Wehe v. Montgomery, 711 F.Supp. 1035, 1039 (D.Or.1989) (Redden, J.). Van Ness, Paulson and Wehe, as well as Gooding, discussed ante at 264, are all in accord with the approach we adopt today