Robert L. ZINK, Plaintiff–Appellant,

v.

MERRILL LYNCH PIERCE FENNER
& SMITH, INC.; Peter A. Childs,
Defendants–Appellees.

No. 92–5175.

United States Court of Appeals,
Tenth Circuit.

Dec. 17, 1993.

Robert L. Zink, pro se.

John S. Athens and Deirdre O. Dexter, of Conner & Winters, Tulsa, OK, for defendants-appellees.

Before MOORE, ANDERSON, and TACHA, Circuit Judges.

TACHA, Circuit Judge.

Plaintiff appeals the district court's approval of an arbitration panel's finding for defendants on plaintiff's state claims. Plaintiff asserts that the district court erred in holding that these claims are covered by an arbitration agreement between the parties. Plaintiff further asserts that, even if the agreement does cover the claims, the district court erred in applying the principles of the Federal Arbitration Act to the case. Finally, plaintiff contends that the district court erred in dismissing on collateral estoppel grounds his claim under § 17(a) of the Securities Act of 1933. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.[1]

## I. Background

In December 1980, plaintiff, Robert Zink, purchased $100,000 worth of Washington Public Power Supply System ("WPPSS") bonds and $26,000 worth of Southwestern Bell Telephone ("SWBT") bonds through defendant Merrill Lynch Pierce Fenner & Smith, Inc. In connection with this transaction, an account was opened for Mr. Zink. Defendant Peter Childs acted as the registered representative for this account (defendants will be referred to collectively as "Merrill Lynch"). Later, in June 1982, Mr. Zink and Merrill Lynch executed a formal account agreement which included an arbitration clause that in part provides: "It is agreed that any controversy between us arising out of your business or this agreement shall be submitted to arbitration...."

In December 1983, plaintiff filed suit against defendants in the United States District Court for the Northern District of Oklahoma asserting state and federal claims in connection with the 1980 purchase of the WPPSS and SWBT bonds. In March 1987 the district court granted partial summary judgment for defendants on the grounds that plaintiff's claims were covered by the arbitration clause in the 1982 account agreement and referred six of the seven counts in plaintiff's complaint to arbitration.[2] The court stayed proceedings on count seven of plaintiff's complaint—which alleged violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 77j(b), and § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) (these claims will be referred to collectively as "federal securities claims")—due to uncertainty at the time as to whether the claims were arbitrable under federal law.[3] After this uncertainty was resolved, the district court, on November 4, 1987, referred the federal securities claims to arbitration as well.

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

2. Plaintiff originally appealed the March 1987 order of the district court in 1987. We dismissed that appeal holding that the order was not an appealable final order under 28 U.S.C. § 1291. *Robert L. Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, No. 87–1598 (10th Cir. Oct. 6, 1987).

3. At the time, the Supreme Court had granted certiorari in *McMahon v. Shearson/American Express, Inc.*, 788 F.2d 94 (2d Cir.), *cert. granted*, 479 U.S. 812, 107 S.Ct. 60, 93 L.Ed.2d 20 (1986), on the issue of the arbitrability of a § 10(b) claim. Subsequently, the Court held that such a claim is in fact arbitrable. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987).

On November 20, 1991 an arbitration panel found in favor of defendants on all of plaintiff's claims. Plaintiff then moved to vacate the panel's findings and set aside the district court's November 4, 1987 referral order on several grounds. With respect to his federal securities claims, plaintiff pointed to our decision in *Coffey v. Dean Witter Reynolds, Inc.*, 891 F.2d 261 (10th Cir.1989), *cert. denied*, 498 U.S. 810, 111 S.Ct. 43, 112 L.Ed.2d 20 (1990), in which we held that the Supreme Court's ruling in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), regarding the arbitrability of a § 10(b) claim should not be applied retroactively. *Coffey*, 891 F.2d at 263–66. Plaintiff argued that *Coffey* dictates that his federal securities claims are not arbitrable.

The district court agreed with plaintiff with respect to the general rule stated in *Coffey* and its effect on the arbitrability of plaintiff's federal securities claims. However, it denied plaintiff's request for a hearing in district court on these claims. The court held that under our second decision in *Coffey v. Dean Witter Reynolds, Inc.*, 961 F.2d 922 (10th Cir.1992), plaintiff is collaterally estopped from litigating the issues in his federal securities claims in light of the arbitration panel's resolution of what the district court determined to be the same issues in connection with his state claims. On July 30, 1992, the district court approved the arbitration panel's ruling with respect to plaintiff's state claims and entered judgment thereon as final disposition of the case.

## II. *Coverage of the Arbitration Clause*
### A. *Terms of the Arbitration Clause*

■ Plaintiff first argues that by its own terms the arbitration clause in his 1982 agreement with Merrill Lynch does not cover the dispute arising from the WPPSS and SWBT bond purchases. The district court found that the arbitration clause language does in fact cover this dispute. We agree.

■ Arbitration is a matter of contract. *Bridgestone/Firestone, Inc. v. Local Union*

No. 998, 4 F.3d 918, 921 (10th Cir.1993). Interpretation of a contract such as the arbitration agreement at issue is a question of law where the contract's construction does not depend on extrinsic evidence and where the language is susceptible of only one reasonable interpretation. *See Stegall v. Little Johnson Associates, Ltd.*, 996 F.2d 1043, 1048 (10th Cir.1993); *Evensen v. Pubco Petroleum Corp.*, 274 F.2d 866, 872 (10th Cir. 1960). We find the arbitration agreement in this case to be susceptible of interpretation as a matter of law.

■ The agreement reads: "[A]ny controversy between [the parties] arising out of [plaintiff's] business *or* this agreement shall be submitted to arbitration" (emphasis added). In reviewing this language we are guided by the principal that arbitration agreements are favored and are to be broadly construed with doubts being resolved in favor of coverage. *See AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648–50, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–942, 74 L.Ed.2d 765 (1983); *Bridgestone/Firestone, Inc.*, 4 F.3d at 921. In this light the arbitration agreement is clearly broad enough to cover the dispute at issue despite the fact that the dealings giving rise to the dispute occurred prior to the execution of the agreement. *See Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1028 (11th Cir.1982) ("An arbitration clause covering disputes arising out of the contract *or* business between the parties evinces a clear intent to cover more than just those matters set forth in the contract."). Plaintiff's contention that an agreement to arbitrate a dispute must pre-date the actions giving rise to the dispute is misplaced.[4] Such a suggestion runs contrary to contract principles which govern arbitration agreements. *See Bridgestone/Firestone, Inc.*, 4 F.3d at 921; *Belke*, 693 F.2d at 1028.

---

4. Plaintiff cites *Coudert v. Paine Webber Jackson & Curtis*, 705 F.2d 78 (2d Cir.1983), in support of his contention. However, *Coudert* stands only for the proposition that disputes arising after the termination of an arbitration agreement are not arbitrable under that agreement. *See Id.* at 81.

## B. Scope of the Federal Arbitration Act

█ Plaintiff further argues that the district court erred in holding his claims arbitrable under the formula of the Federal Arbitration Act ("the Act"), 9 U.S.C. § 2. We review *de novo* the district court's interpretation of the Act. *See Heggy v. Heggy,* 944 F.2d 1537, 1539 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1514, 117 L.Ed.2d 651 (1992).

█ In pertinent part the Act provides that:

A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Plaintiff first contends that the transaction at issue does not "involv[e] commerce." Plaintiff is incorrect. The WPPSS and SWBT bond transactions and the later signed account agreement between the parties providing for trade in securities patently *do* involve "commerce" as defined under the Act.[5] *See Mayaja, Inc. v. Bodkin,* 803 F.2d 157, 160 (5th Cir.1986) (holding that agreements to transact in commodities futures and securities "without question involve interstate 'commerce' as that term is defined in the [Act]"), *vacated on other grounds sub nom. Shearson Lehman Bros., Inc. v. Mayaja, Inc.,* 482 U.S. 923, 107 S.Ct. 3205, 96 L.Ed.2d 692 (1987). Even if little or no actual securities activity occurred under the agreement between the parties—a factor that plaintiff seems to feel is significant—the agreement would still involve commerce under the Act. That this is true is evident from the Supreme Court's discussion of the "involving commerce" requirement in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). There the Court said that " '[t]he control over interstate commerce [one of the bases for the legislation] reaches not only the actual physical shipment of interstate goods but also contracts relating to interstate commerce.' " *Id.* at 401 n. 7, 87 S.Ct. at 1805 n. 7 (quoting H.R.Rep. No. 96, 68th Cong., 1st Sess. 1 (1924)); *see also Snyder v. Smith,* 736 F.2d 409, 417 (7th Cir.) ("because of the strong policy favoring arbitration, the requirement of 'evidencing a transaction involving commerce' must be construed broadly"), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984).

█ Plaintiff next contends that, because the dispute at issue has its origins in actions done prior to the execution of the account agreement[6], the dispute is not covered under the language of the Federal Arbitration Act. Again, we disagree. "The Act was intended to revers[e] centuries of judicial hostility to arbitration agreements by placing arbitration agreements upon the same footing as other contracts." *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 225–26, 107 S.Ct. 2332, 2336–37, 96 L.Ed.2d 185 (1987) (alteration in original) (internal quotations and citations omitted) (citing H.R.Rep. No. 96, 68th Cong., 1st Sess. 1, 2 (1924)). Thus, we construe the language of the Act broadly to cover agreements to arbitrate a dispute not arising out of the contract containing the arbitration agreement so long as the other requirements of the Act are satisfied. *See Joseph Muller Corp. Zurich v. Commonwealth Petrochemicals, Inc.,* 334 F.Supp. 1013, 1020 (S.D.N.Y.1971) ("if there is a written provision for arbitration coupled with a contract between the parties, ... that

---

**5.** Commerce is defined as:

commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation.

9 U.S.C. § 1.

**6.** There is some dispute between the parties as to whether the 1982 account agreement initiated a new account or simply formalized an account already opened when the WPPSS and the SWBT bonds were purchased in 1980. We do not address this question because we find it irrelevant to the resolution of the case.

is enough to satisfy the [Act]"). In so holding, we point especially to that portion of § 2 of the Act dictating that "an agreement in writing to submit to arbitration an *existing* controversy arising out of ... a contract [or] transaction [involving commerce] shall be valid [under the Act]." 9 U.S.C. § 2 (emphasis added).

■ Because we find that the Act is applicable, we reject plaintiff's suggestion that, because substantive state law is relevant to several of plaintiff's claims, New York arbitration principles should be applied in interpreting the scope of the arbitration agreement. "The effect of [section 2 of the Federal Arbitration Act] is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24, 103 S.Ct. at 941; *See also Southland Corp. v. Keating*, 465 U.S. 1, 15–16, 104 S.Ct. 852, 860–861, 79 L.Ed.2d 1 (1984). Therefore, for example, "in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the federal policy favoring arbitration." *Volt Info. Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76, 109 S.Ct. 1248, 1253–54, 103 L.Ed.2d 488 (1989) (citation omitted). This principle extends to other state claims as well.

### III. Plaintiff's § 17(a) Claim

■ Finally, plaintiff claims that the district court erred in holding that he is collaterally estopped from litigating his claim under § 17(a) of the Securities Act of 1933. We do not reach this issue because we have established that there is no private right of action under § 17(a). *Bath v. Bushkin Gaims Gaines & Jonas*, 913 F.2d 817 (10th Cir.1990). While this ground for denying plaintiff's request for a hearing on his § 17(a) claim is different from that relied on by the district court, "it is well-settled that a review-

ing court may affirm [a district court] on any grounds for which there is a record sufficient to permit conclusions of law, including grounds not relied upon by the district court." *United States v. Glover*, 957 F.2d 1004, 1013 (2d Cir.1992) (internal quotations omitted); *see also Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 157, 82 L.Ed. 224 (1937); *Conecuh–Monroe Community Action Agency v. Bowen*, 852 F.2d 581, 588 (D.C.Cir. 1988); *United States ex rel. Link v. Lane*, 811 F.2d 1166, 1168 (7th Cir.1987); *United States v. Pennsylvania*, 533 F.2d 107, 110 n. 7 (3d Cir.1976).[7]

### IV. Conclusion

The judgment of the district court approving the arbitration rulings with respect to plaintiff's state claims and denying plaintiff's request for a hearing on his § 17(a) claim is

**AFFIRMED.**

---

7. We have taken note of plaintiff's argument that defendants may not raise the question of whether a private right of action exists under § 17(a) because defendants did not cross-appeal the district court's finding to the contrary. However, we need not address this argument. We simply exercise our authority to uphold the district court on alternate grounds and find as a matter of law that no private right of action exists under § 17(a).