PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ERIC M. LEVIN,

        *Plaintiff-Appellee,*

v.

ALMS AND ASSOCIATES,
INCORPORATED; STEVEN P. ALMS,

        *Defendants-Appellants.*

No. 10-1896

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, Senior District Judge.
(1:09-cv-03403-MJG)

Argued: December 9, 2010

Decided: February 10, 2011

Before NIEMEYER, DUNCAN, and KEENAN,
Circuit Judges.

Reversed by published opinion. Judge Duncan wrote the opinion, in which Judge Niemeyer and Judge Keenan joined.

## COUNSEL

**ARGUED:** Christopher R. Mellott, VENABLE, LLP, Baltimore, Maryland, for Appellants. Steven Jonathan Kelly, MILES & STOCKBRIDGE, PC, Towson, Maryland, for

Appellee. **ON BRIEF:** Viktoriya M. Shpigelman, VEN-ABLE, LLP, Baltimore, Maryland, for Appellants. Matthew S. Sturtz, MILES & STOCKBRIDGE, PC, Towson, Maryland, for Appellee.

---

## OPINION

DUNCAN, Circuit Judge:

This action arises from the district court's holding that certain disputes between Alms and Associates, Incorporated and Steven P. Alms ("Appellants") and Eric Levin ("Appellee") were not subject to mandatory arbitration. Following the filing of this appeal, Appellants asked this court to stay the district court proceedings on the underlying claims pending resolution of the appeal. On September 20, 2010, we issued an interim one-judge order staying proceedings pending resolution of the motion. Upon further consideration of the motion, for the reasons detailed below, we joined the majority of the circuits to have decided the issue in holding that the filing of the arbitrability appeal, as would be true of appeals generally, divested the district court of jurisdiction over the underlying claims. Accordingly, on December 9, 2010, we issued an order extending the stay pending resolution of the appeal. Having reviewed the merits of the appeal, we now hold that the district court erred in finding that the underlying claims were not subject to mandatory arbitration.

I.

Beginning in 2004, Appellants provided financial advisory services to Appellee. In 2004, 2005, 2006, and 2007 the parties entered into agreements referred to as "CFO Advisory Agreements," which governed the advisory relationship and the payment of fees.

According to Appellee, his relationship with Appellants was plagued by irregularities. For example, he asserts that in early 2006 Appellants advised him to invest more than $83,000 in a land development company called SilverDeer Olde Liberty, LLC. That same year, Appellants also advised Appellee to invest $500,000 in a related real estate venture known as SilverDeer Lakebound Fixed Return, LLC. Appellee alleges that, in so doing, Appellants failed to disclose that they were paid consultants for the SilverDeer entities and that they had an advising agreement with SilverDeer under which they were entitled to receive $150,000 in annual fees. Appellee further alleges that "there is reason to believe" that Appellants knew that SilverDeer was having financial difficulties as early as 2005. Appellee's Br. at 8. Appellee asserts that Appellants neither informed him about the "blatant conflict of interest" nor disclosed SilverDeer's financial problems. *Id.*

Appellee also alleges that, from 2004 to 2009, Appellants received fees from a financial firm known as Lydian Wealth Management in exchange for placing Appellee's investment account with that firm. According to Appellee, the CFO Agreements with Appellants required them to fully disclose the commission to Appellee and to reduce their yearly advising fees based on that commission. Appellee asserts that Appellants did not inform him about the commission and did not reduce their fees. Finally, Appellee alleges that, in 2007, Appellants misled him into giving them a loan that contained terms unfavorable to him.

In 2009, Appellee filed suit against Appellants based on the allegations described. The complaint raised claims for negligence, negligent misrepresentation, violation of the Investment Advisers Act of 1940, 15 U.S.C. § 80b-1, and breach of contract.

Appellants moved to dismiss the action or to stay the proceedings pending arbitration. They alleged that the 2007 CFO Agreement with Appellee dictated that "any dispute" between

the parties would be submitted to binding arbitration. They further noted that the 2007 Agreement also purported to "encompass[ ] and embod[y] all terms, understandings and agreements by and between those parties." J.A. 36. On that basis, Appellants argued that all of Appellee's claims were subject to arbitration.

The district court ordered Appellee to pursue any claims accrued after January 1, 2007, in arbitration, but found that the arbitration agreement did not cover the pre-2007 claims. The court reasoned that the arbitration clause in the 2007 agreement was not worded such that it would apply retroactively to claims accrued before the agreement was signed.

Appellants filed a notice of appeal with this court and moved the district court to stay all proceedings pending appeal. The district court specifically found that the appeal was not frivolous. It nevertheless denied the motion in part, explaining:

> Plaintiff has a strong interest in avoiding delay of the ultimate resolution of the case. In addition, Defendants certainly will not suffer undue prejudice from allowing proceedings in the instant case to continue, at least through discovery. Moreover, in view of the apparent presence of threshold limitations issues pertaining to the pre-2007 claims, it would appear beneficial to all concerned to proceed expeditiously.

*Levin v. Alms*, No. 09-3403 (D.Md. filed Aug. 31, 2010), ECF No. 32. The district court therefore allowed discovery regarding Plaintiffs pre-2007 claims to proceed. Appellants petitioned this court to stay the proceedings.

On September 20, 2010 we issued a temporary one-judge order staying the proceedings pending resolution of the stay motion. We scheduled the motion and the merits of the case for oral argument on December 9, 2010. Immediately follow-

ing oral argument on the motion, we issued an order granting the motion and extending the interim stay pending resolution of the appeal, with the panel's reasons to be explained in this opinion.

## II.

Appellants assert that the filing of this appeal challenging the district court's arbitrability decision divested that court of jurisdiction over the underlying claims. They further argue that the district court erred in holding that the 2007 CFO Agreement did not bind the parties to arbitrate any claims that accrued prior to 2007. We address each contention in turn.

## A.

As a general rule, the filing of an appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). Section 16(a)(1)(A) of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16(a)(1)(A), authorizes an appeal from a district court's denial of a petition to stay an action pending arbitration under § 3 of that act.[1] Appellants' motion required us to decide whether the general rule applies in an appeal under § 16(a)(1)(A) to divest the district court of jurisdiction over the proceedings relating to the underlying claims. The Third, Seventh, Tenth, and Eleventh Circuits have held that an appeal regarding arbitrability of claims does divest the district court of jurisdiction over those claims, as long as the appeal is not frivolous. The Second and Ninth Circuit have held that

---

[1] Although Appellants state that the original motion they filed with the district court was a motion to stay under § 4 of the FAA, 9 U.S.C. § 4, that statement is in error. *See* Appellants' Motion Br. at 4. The section of the FAA referring to motions to stay an action pending arbitration is § 3. A review of Appellants' original motion filed with the district court reveals that the motion was correctly filed pursuant to § 3 of the FAA, not § 4.

no such divestiture occurs. For the reasons explained below, we join the position adopted by the majority of the circuits. We first discuss the issue of divestiture and then examine the frivolousness exception.

1.

The seminal case adopting the majority position is *Bradford-Scott Data Corp. v. Physician Computer Network*, 128 F.3d 504 (7th Cir. 1997). There the court held that a district court was automatically divested of jurisdiction by the filing of an appeal that alleged that the claims before the district court were subject to mandatory arbitration. *Id.* at 505. The court explained that "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Id.* (quoting *Griggs*, 459 U.S. at 58). It further found that the underlying claims before the district court were necessarily "involved in the appeal" because "[w]hether the case should be litigated in the district court is not an issue collateral to the question presented by an appeal under § 16(a)(1)(A) . . . [I]t is the mirror image of the question presented on appeal." *Id.* The court also noted that "[c]ontinuation of proceedings in the district court largely defeats the point of the appeal and creates a risk of inconsistent handling of the case by two tribunals." *Id.* Finally, the court explained how the principles underlying arbitration supported its rationale:

> Arbitration clauses reflect the parties' preference for non-judicial dispute resolution, which may be faster and cheaper. These benefits are eroded, and may be lost or even turned into net losses, if it is necessary to proceed in both judicial and arbitral forums, or to do this sequentially. . . . Immediate appeal under § 16(a) helps to cut the loss from duplication. Yet combining the costs of litigation and arbitration is what lies in store if a district court continues with the

case while an appeal under § 16(a) is pending. Cases of this kind are therefore poor candidates for exceptions to the principle that a notice of appeal divests the district court of power to proceed with the aspects of the case that have been transferred to the court of appeals.

*Id.* at 506. Three other circuits have adopted the *Bradford-Scott* rationale. *See Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 215 n.6 (3d Cir. 2007); *McCauley v. Halliburton Energy Servs., Inc.*, 413 F.3d 1158, 1162-63 (10th Cir. 2005); *Blinco v. Greentree Servicing, LLC*, 366 F.3d 1249, 1253 (11th Cir. 2004).

The Ninth Circuit and the Second Circuit have taken the contrary view. In *Britton v. Co-op Banking Group*, 916 F.2d 1405 (9th Cir. 1990), the court found that the district court was not divested of jurisdiction, reasoning that because "arbitrability was the only substantive issue presented in [the] appeal" the claims before the district court were not "the subject of the appeal." *Id.* at 1412. In *Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004), the Second Circuit adopted the Ninth Circuit's holding. *See id.* at 54 ("[We] explicitly adopt the Ninth Circuit's position that further district court proceedings in a case are not 'involved in' the appeal of an order refusing arbitration, and that a district court therefore has jurisdiction to proceed with a case absent a stay from this Court.").

The courts adopting the majority position have expressly rejected the contrary rationale. The Seventh Circuit explained that although "arbitrability is distinct from the merits of the litigation," an appeal under § 16(a)(1)(A) "presents the question whether the district court must stay its own proceedings pending arbitration" and therefore "[w]hether the litigation may go forward in the district court is precisely what the court of appeals must decide." *Bradford-Scott*, 128 at 506. Similarly, the Eleventh Circuit explained that "[t]he only aspect of

the case involved in an appeal from an order denying a motion to compel arbitration is whether the case should be litigated at all in the district court" and thus "[t]he issue of continued litigation in the district court is not collateral to the question presented by an appeal under § 16(a)(1)(A)." *Blinco*, 366 F.3d at 1251.

We find the majority view persuasive. The core subject of an arbitrability appeal is the challenged continuation of proceedings before the district court on the underlying claims. Therefore, because the district court lacks jurisdiction over "those aspects of the case involved in the appeal," it must necessarily lack jurisdiction over the continuation of any proceedings relating to the claims at issue. *Griggs*, 459 U.S. at 58. That the present case involves only the continuation of discovery does not change that rationale. Discovery is a vital part of the litigation process and permitting discovery constitutes permitting the continuation of the litigation, over which the district court lacks jurisdiction. *See Bradford-Scott*, 128 F.3d at 506 ("[P]reparation for trial must be suspended until the court of appeals renders a decision."). Furthermore, allowing discovery to proceed would cut against the efficiency and cost-saving purposes of arbitration. *See id.* at 506; *Blinco*, 366 F.3d at 1251 ("[T]he principal benefits of arbitration, avoiding the high costs and time involved in judicial dispute resolution, [are] lost if the case proceeds in both judicial and arbitral forums."). Also, allowing discovery to proceed could alter the nature of the dispute significantly by requiring parties to disclose sensitive information that could have a bearing on the resolution of the matter. If we later hold that the claims were indeed subject to mandatory arbitration, the parties will not be able to unring any bell rung by discovery, and they will be forced to endure the consequences of litigation discovery in the arbitration process.

2.

The approach discussed above is subject to certain safeguards against frivolous appeals. As the Ninth Circuit noted

in *Britton*, it would be inadvisable to "allow a defendant to stall a trial simply by bringing a frivolous motion to compel arbitration." 916 F.2d at 1412. For this reason, each of the circuits adopting the majority view has created a frivolousness exception to the divestiture of jurisdiction. The Seventh Circuit found that the frivolousness concern "is met by the response that the appellee may ask the court of appeals to dismiss the appeal as frivolous or to affirm summarily." *Bradford-Scott*, 128 F.3d at 506. It further held that "[e]ither the court of appeals or the district court may declare that the appeal is frivolous, and if it is the district court may carry on with the case." *Id.* The Tenth Circuit elaborated on the mechanics of the frivolousness exception as follows:

> [U]pon the filing of a motion to stay litigation pending an appeal from the denial of a motion to compel arbitration, the district court may frustrate any litigant's attempt to exploit the categorical divestiture rule by taking the affirmative step, after a hearing, of certifying the § 16(a) appeal as frivolous or forfeited. That certification will prevent the divestiture of district court jurisdiction. Appellant may then move this court for a stay pending appeal, asserting that the district court's finding of frivolousness is not supported by the record. If this court determines that the appeal is not frivolous, we will stay the litigation in the district court pending the appeal of the denial of the motion to compel arbitration.

*McCauley*, 413 F.3d at 1162 (internal citations omitted); *see also Ehleiter*, 482 F.3d at 215 n.6 (agreeing "with the majority rule of automatic divestiture where the Section 16(a) appeal is neither frivolous nor forfeited"); *Blinco*, 366 F.3d at 1253 ("When a litigant files a motion to stay litigation in the district court pending an appeal from the denial of a motion to compel arbitration, the district court should stay the litigation so long as the appeal is non-frivolous.").

We find the frivolousness safeguard as articulated by the Tenth Circuit to be not only sensible but also consistent with our approach in other areas of the law. For example, in the double-jeopardy context, this court has recognized a "dual jurisdiction" rule, "which allows a district court to proceed with trial while a defendant pursues [a] . . . double jeopardy appeal, where the district court has concluded that the appeal is frivolous." *United States v. Montgomery*, 262 F.3d 233, 240 (4th Cir. 2001).[2] In recognizing this doctrine, we noted that it was not legally foreclosed by the divesture of jurisdiction rule because that rule is "not based upon statutory provisions or the rules of civil or criminal procedure" but rather "is a judge made rule originally devised . . . to avoid confusion or waste of time." *Id.* at 239-40. The frivolousness exception adopted by the majority of the circuits is analogous to and consistent with this "dual jurisdiction" doctrine.

We therefore hold that an appeal on the issue of arbitrability automatically divests the district court of jurisdiction over the underlying claims and requires a stay of the action, unless the district court certifies the appeal as frivolous or forfeited. In the event that such certification occurs, the party alleging arbitrability may move this court to stay the district court proceedings pending a review of the frivolousness determination. Given that the district court here specifically held that the appeal was not frivolous, a stay of the action during the pendency of this appeal was required. It is for these reasons that we granted Appellants' motion to stay the proceedings below, pending resolution of this appeal.

---

[2]As Appellants note, the Supreme Court has recently held that an appellate court has jurisdiction over any appeal under 9 U.S.C. § 16, regardless of whether the issue is frivolous. *Arthur Andersen LLP v. Carlisle*, 129 S.Ct. 1896, 1900-01 (2009). However, this holding does not affect the validity of the "dual jurisdiction" doctrine because that doctrine acknowledges that the appellate court has jurisdiction but grants special permission for the district court to exercise jurisdiction as well.

## B.

We turn now to the merits of this appeal. The issue before us is whether the district court erred in holding that the arbitration clause in the 2007 CFO Advisory Agreement did not apply to claims that accrued prior to January 1, 2007. We "review de novo the district court's conclusions regarding the arbitrability of the disputes." *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 91 (4th Cir. 1996).

"Whether a party has agreed to arbitrate an issue is a matter of contract interpretation: '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Id.* at 92 (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). However, the Supreme Court has consistently encouraged a "healthy regard for the federal policy favoring arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). This federal policy is based on the FAA, which "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25. The "heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989). It is through this lens that we must evaluate the language of the 2007 CFO Agreement.

The Agreement includes the following integration clause:

> It is agreed by and between the parties hereto that this agreement encompasses and embodies all terms, understandings and agreements by and between those parties and the terms may not be amended except in writing by the parties hereto.

J.A. 36. The agreement also includes the following paragraph:

> *Any dispute shall be submitted to binding arbitration* before a single arbitrator in Howard County, Maryland, under the rules of the American Arbitration Association, and the decision of the arbitrator shall be final and binding upon the parties. In the event that the client shall implement any advice, suggestion, proposal or plan advanced by the advisor or developed as a result of interaction between the client, the advisor and/or any other advising professionals, the advisor shall not be liable to the client for any loss, liability, costs or expenses which the client may incur as a result thereof in excess of the actual amount of fees paid to the advisor by the client under this contract.

*Id.* (emphasis added). The first sentence in this paragraph is the arbitration clause that is the subject of this appeal.

Appellee alleges that it is not the integration language that is relevant here, but rather the allegedly narrower arbitration provision. Specifically, he alleges that the arbitration provision's "any dispute" language refers only to disputes arising after the signing of the 2007 CFO agreement and that it trumps the reference to "all terms, understandings and agreements" in the integration clause. Our precedent instructs that the contract must be read "as a whole." *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 260 (4th Cir. 2005). Furthermore, whether one of two provisions in a contract controls "is irrelevant where, as here, the two provisions can be comfortably read together." *Universal Concrete Prods. Corp. v. Turner Constr. Co.*, 595 F.3d 527, 531 (4th Cir. 2010). Here, the integration and arbitration clauses can easily be read together to state that the "agreement encompasses and embodies all terms, understandings and agreements by and between those parties" and that "[a]ny dispute shall be submitted to binding arbitration." J.A. 36. The language is broad

enough to encompass *all* agreements and *any* disputes, past and present, especially given that the presumption in favor of arbitrability is particularly applicable when the arbitration clause is broadly worded. *See AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (finding the presumption "particularly applicable where the clause is as broad as the one employed in this case, which provides for arbitration of 'any differences arising with respect to the interpretation of this contract'"); *see also J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir. 1988) ("The International Chamber of Commerce's recommended clause which provides for arbitration of '[a]ll disputes arising in connection with the present contract' . . . does not limit arbitration to the literal interpretation or performance of the contract. It embraces every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute.").

Although the arbitration clause does not specifically state that it applies to claims accruing before the 2007 Agreement, courts have generally applied broad "any dispute" language retroactively, especially when combined with language that refers to all dealings between the parties. For example, in *Cara's Notions v. Hallmark Cards*, 140 F.3d 566, 568 (4th Cir. 1998), we applied retroactively an arbitration clause that stated that the parties would arbitrate "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, *or any aspects of the relationship between*" the parties. *Id.* (emphasis in the original). We found relevant a separate section of the agreement that stated "[t]his agreement supersedes all prior oral or written representations and constitutes the entire understanding." *Id.* at 570. While the agreement here does not specifically state that it supersedes others, it does similarly state that it "encompasses and embodies *all* . . . agreements," which would seem to include prior agreements, making the arbitration clause referring to "all disputes" applicable retroactively.

Our sister circuits give retroactive application to broad arbitration clauses as well. For instance, in *Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006), the First Circuit found that an agreement to arbitrate "any claim or dispute relating to or arising out of this agreement or the services provided" could be applied retroactively because "the phrase 'or the services provided' covers claims or disputes that do not arise 'out of this agreement' and hence are not limited by the time frame of the agreements." *Id.* at 33. Similarly, in *Zink v. Merrill Lynch Pierce Fenner & Smith*, 13 F.3d 330 (10th Cir. 1993), the court found that the language "[a]ny controversy between [the parties] arising out of [plaintiff's] business or this agreement shall be submitted to arbitration" was "clearly broad enough to cover the dispute at issue despite the fact that the dealings giving rise to the dispute occurred prior to the execution of the agreement." *Id.* at 332. Also, in *Coenen v. R. W. Pressprich & Co.*, 453 F.2d 1209 (2d Cir. 1972), the court found that an agreement to arbitrate "any controversy between . . . members" encompassed controversies that accrued before the members entered into the agreement. *Id.* at 1212.

Appellee argues that he cannot be forced to arbitrate his claims because he did not "knowingly and deliberately" waive his right to judicial forum by entering into an "express and specific" agreement to arbitrate the prior claims. Appellee's Br. at 11-13. He relies on the limitation of losses statement following the arbitration clause which provides as follows: "the advisor shall not be liable to the client for any loss . . . in excess of the actual amount of fees paid to the advisor by the client under this contract." J.A. 36. Citing cases in which the arbitration clause at issue stated that it applied to "this agreement," Appellee argues that the "this contract" language restricts the arbitration clause only to the 2007 CFO Agreement. Appellee's Br. at 14-15; *see, e.g.*, *Peerless Importers, Inc. v. Wine, Liquor & Distillery Workers Union Local One*, 903 F.2d 924, 927-28 (2d Cir. 1990) (finding that the language "arising under this Agreement and during its term" did not apply retroactively). These cases provide no support for

Appellee's view precisely because the limitation in them inhered in the arbitration clause itself. Here, the "this contract" language applies only to the limitation of losses provision, not to the arbitration clause. The loss provision makes no reference to arbitration and there is nothing in the language or structure of the paragraph that indicates that the second sentence is intended to limit or qualify the first in any way. Furthermore, even assuming that the "this contract" language in the loss limitation provision creates some confusion as to the retroactivity of the arbitration provision preceding it, the arbitrability presumption applied to broad arbitration clauses would require us to resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24-25.

Appellee further asserts, and the district court agreed, that the arbitration clause is not retroactively applicable because it is contained in only the most recent of successive contracts and therefore the clause cannot be read to constitute a waiver of Appellee's right to a judicial forum for previously accrued claims. As support for this proposition, both the district court and Appellee rely heavily on *Hendrick v. Brown & Root, Inc.*, 50 F. Supp. 2d 527 (E.D. Va. 1999), which concluded that an arbitration clause contained in the last of a series of project-by-project contracts did not apply to claims that accrued under previous agreements in that series. *Hendrick*, too, is easily distinguishable on its facts. The parties in that case had no ongoing business relationship like the one that existed here. Rather, the parties entered into four discrete and separate "project-by-project" agreements spanning specific periods of time and with lengthy gaps between each agreement. The *Hendrick* court described the contracts at issue as follows:

> Hendrick was hired pursuant to a different contract for each period of employment and, pursuant to those contracts, Hendrick was hired for separate and distinct projects. On each occasion, he was treated as

a new employee; and, therefore, each time he was hired, Hendrick was required to submit a new job application and to complete new tax and other personnel forms. Each period of employment was formally terminated in writing and Brown & Root processed termination forms which made clear that Hendrick was no longer entitled to compensation, medical coverage and other benefits. As is evident from each of the four employment contracts, Hendrick was an at-will employee and then only for the particular assignment for which he was hired under the operative employment contract.

*Id.* at 529. The court specifically distinguished *Zink*, discussed above, in which the 10th Circuit held that the language "[a]ny controversy between [the parties] arising out of [plaintiff's] business or this agreement shall be submitted to arbitration" applied to claims that accrued before the arbitration agreement was entered into. *See Zink*, 13 F.3d at 332. *Hendrick* found *Zink* inapplicable to the case before it, stating "*Zink* does not apply here because the parties did not have an ongoing relationship under the 1988 employment contract." *Id.* at 536. According to the *Hendrick* court, *Zink* gave the clause retroactive application because the activity on which the underlying claim was based "was part and parcel of the ongoing business dealings between the parties." *Id.*

The circumstances in this case are far more similar to *Zink* than *Hendrick*. Unlike in *Hendrick*, here there is no evidence that the parties had stop-and-go business dealings that periodically ended completely and began from scratch again. Instead, the parties here had an ongoing relationship that was seamlessly renewed on an annual basis. Furthermore, the underlying claims in this case concern events that are "part and parcel" of the long-standing financial advising relationship between Appellants and Appellee. Thus, *Hendrick* does not support the conclusion that the arbitration provision here is not retroactively applicable.

Accordingly, given the broad scope of the arbitration clause applying to "any dispute" between the parties, and in light of the arbitrability presumption that applies with special force to broadly written clauses, we find that the district court erred in holding that claims that accrued before 2007 were not subject to arbitration. We therefore remand this matter to the district court for further proceedings consistent with this opinion.

## III.

For the foregoing reasons we

*REVERSE.*