Dr. A. Cemal EKIN, Individually and on behalf of similarly situated individuals, Plaintiff,

v.

AMAZON SERVICES, LLC, Defendant.

Case No. C14–0244–JCC.

United States District Court, W.D. Washington, at Seattle.

Signed Dec. 10, 2014.

Charles Donnellan Sirianni, Chris Robert Youtz, David M. Simmonds, Eleanor Hamburger, Richard E. Spoonemore, Stephen John Sirianni, Sirianni Youtz Spoonemore, Seattle, WA, for Plaintiff.

Ambika K. Doran, James C. Grant, Rebecca J. Francis, Davis Wright Tremaine, Seattle, WA, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION

JOHN C. COUGHENOUR, District Judge.

This matter comes before the Court on Defendant Amazon Services, LLC's (Amazon's) Motion to Compel Arbitration (Dkt. No. 24). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the Motion for the reasons explained herein.

## I. BACKGROUND

This suit arises from the operation of Amazon's Prime service. From 2005 to February 2014, a period inclusive of the time period relevant to this suit, Amazon offered its Prime subscribers free two-day shipping, discounted one-day shipping, and weekend shipping on millions of eligible products, for a $79 annual fee. (Ressmey-er Decl., Dkt. No. 25 at ¶ 2 & Ex. A–B.) Prime eligible products are those that are sold by Amazon or that are sold by third-party merchants participating in the Fulfillment by Amazon (FBA) program. (Haberkorn Decl., Dkt. No. 26 at ¶ 3.) Customers signing up for Amazon Prime must accept Amazon's Prime Terms and Conditions (T & Cs), by clicking a button next to text that states "you acknowledge that you have read and agree to the *Amazon Prime Terms and Conditions*," the underlined portion of this sentence providing a hyperlink that directs customers to the T & Cs. (Motion to Compel Arbitration, Dkt. No. 24 at 2–3.) These T & Cs incorporate Amazon's Conditions of Use (COU). (*Id.*) Customers also accept the COU every time they make a purchase on Amazon.com; to make a purchase, customers must click a button next to text that says "by placing your order, you agree to Amazon.com's *privacy notice* and *conditions of use*," the underlined portions also bearing hyperlinks to the eponymous documents. (*Id.*)

Since August 19, 2011, Amazon's COU have included a binding arbitration agreement. (*Id.*)

Both Plaintiff Dr. A. Cemal Ekin and Interested Party Ms. Marcia Burke have been Amazon Prime members since 2006 and 2007, respectively. (Motion to Compel Arbitration, Dkt. No. 24 at 3–4.) Although the arbitration agreement was not part of the COU to which the parties agreed when they initially joined Amazon, Plaintiffs have actively renewed[1] their Prime membership several times, both after the August 19, 2011 addition of the arbitration agreement to the COU, and after the filing of the Complaint in this suit. (*Id.*) Fur-

---

1. It appears that Ms. Burke's renewals of her Prime membership occurred automatically, but that she did not endeavor to cancel this feature after filing the Complaint. Dr. Ekin, it appears, actively re-signed up for Prime after canceling his membership, once in June 2012 and once in July 2013. (Haberkorn Decl., Dkt. No. 26 at ¶ 13.)

ther, both Dr. Ekin and Ms. Burke agreed to the arbitration provision in the COU several times by purchasing 116 items and 555 items from Amazon, respectively, since August 2011, including after the filing of the Complaint. (*Id.* at 4–5.)

Amazon's arbitration agreement provides that

> Any dispute or claim *relating in any way* to your use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com will be resolved by binding arbitration, rather than in court ... We [both Amazon and any customer] each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated, or representative action.

(*Id.* at 5–6 (emphasis added).) In the arbitration agreement, Amazon agrees to pay all arbitrator fees and costs for claims under $10,000 and to unilaterally waive its claims for attorneys' fees. (*Id.*) Arbitrations are conducted by the American Arbitration Association, pursuant to its rules governing consumer-related disputes. (*Id.* at 6.) Customers may choose to arbitrate in their hometowns, another convenient location, or may also arbitrate by telephone or through written submissions. (*Id.*) The arbitration agreement also provides that any disputes are to be governed by the Federal Arbitration Act (FAA), associated federal law, and the laws of Amazon's principal place of business (Washington state). (*Id.*)

In February of 2014, Plaintiff filed a putative Rule 23(b)(3) class action suit, asserting claims for breach of contract and violations of Washington's Consumer Protection Act, stemming from what Dr. Ekin alleges was Amazon's practice of encourag-

ing FBA-vendors to increase the base cost of their products to recapture the revenue lost from providing free shipping to Prime members. (First Amended Complaint, Dkt. No. 5 at ¶¶ 3.4; 6.1–6.3; 7.1–7.3.) The putative class consists of all those persons and entities who became Amazon Prime members between October 24, 2007 and February 22, 2011, the period before Amazon's arbitration agreement became part of its COU. (*Id.* at ¶ 5.1.) Again, both the putative class representative, Dr. Ekin, and interested party Ms. Burke renewed their Prime memberships several times and purchased hundreds of items after the end of this class period and even after the filing of the Complaint, each time agreeing to COU that, after August 2011, included the arbitration agreement.[2] Plaintiffs do not, in their discussion of commonality and predominance or in any other section of the Amended Complaint, provide the Court with any idea of how many of the putative class members likewise assented to the arbitration agreement *after* the relevant class period.[3]

## II. DISCUSSION

### A. Legal Standard

Since the Supreme Court's seminal ruling in *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011), federal courts are limited in their discretion to disregard a valid agreement to arbitrate. In *Concepcion*, the Court affirmed the binding and state law—preempting nature of the Federal Arbitration Act's Section 2, which provides that agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

---

**2.** *See* fn. 1, *supra.*

**3.** This would pose problems with regard to class certification, if the Court was not com-

pelled by the FAA to order arbitration on this matter.

The Ninth Circuit has followed the precedent set by *Concepcion* and its progeny,[4] repeatedly issuing opinions confirming that the FAA preempts state laws declaring certain arbitration agreements to be unconscionable, and thus unenforceable. For instance, in *Coneff v. AT & T Corp.*, 673 F.3d 1155, 1160–61 (9th Cir.2012), the Ninth Circuit held that the FAA preempted Washington's version of the California rule that the Supreme Court struck down in *Concepcion*. And in *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 935 (9th Cir.2013), the Court relied on *Italian Colors* to strike down a California rule declaring arbitration agreements per se invalid when they prevented the litigation of representative claims for public injunctive relief.

 Thus, this Court is firmly bound by the FAA in adjudicating this Motion. The FAA requires courts to compel arbitration if (1) a valid agreement to arbitrate exists, and (2) the dispute falls within the scope of that agreement. *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir.2000). If both of these two prongs are fulfilled, then the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Id.; see* *also Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *Kilgore v. Keybank, N.A.,* 718 F.3d 1052, 1058 (9th Cir.2013).

## B. The Validity of Amazon's Arbitration Agreement

 Plaintiffs' main objection to the validity of the arbitration agreement[5] is that Amazon expressly reserves the right to change, without notice, consent, or a refund, its Prime T & Cs and general COU. Plaintiffs claim that under prevailing Ninth Circuit case law, this makes the arbitration agreement, which is incorporated into these COU, unenforceable due to unconscionability (and the FAA strictures thus inapplicable, as per 9 U.S.C. § 2's savings clause). (Plaintiffs' Response to Amazon's Motion to Compel Arbitration, Dkt. No. 38 at 1.) However, Plaintiffs' argument is unavailing for several reasons.

First, the cases cited by Plaintiffs do not actually support their assertion that Ninth Circuit precedent establishes that unilateral reservations of the right to change contract terms makes such contracts illusory, and thus per se invalid. Plaintiffs' argument on this issue largely rests on *Pokorny v. Quixtar, Inc.,* 601 F.3d 987, 997–99 (9th Cir.2010) and *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, 1179 (9th Cir. 2003).[6] However, in these cases, the Ninth

---

**4.** Including, *inter alia, American Express Co. v. Italian Colors Restaurant,* —— U.S. ——, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013); *Marmet Health Care Center, Inc. v. Brown,* —— U.S. ——, 132 S.Ct. 1201, 1203–04, 182 L.Ed.2d 42 (2012).

**5.** Plaintiffs do not dispute that they accepted the arbitration agreement that was part of the Prime T & Cs and the Amazon COU numerous times after August 2011, through both Dr. Ekin's and Ms. Burke's myriad active purchases and renewals (active in Dr. Ekin's case) of their Prime memberships, nor could they, given this District's recognition of the Ninth Circuit rule that similar "clickwrap" agreements are completely enforceable. *See e.g., Peters v. Amazon Services, LLC,* 2 F.Supp.3d 1165, 1170 (W.D.Wash.2013). For this reason, the Court finds inapplicable to this case Plaintiffs' references to the fact that the FAA does not require compliance with arbitration arguments to which there was not mutual assent, *see* Plaintiffs' Response, Dkt. No. 38 at Section III(A).

**6.** Plaintiff cites other authorities in support of this proposition, but they are not binding on this Court. However, these non-binding authorities are not, on the whole, even persuasive because they may all be distinguished from the present suit on several salient points.

Circuit simply included the presence of a unilateral change-in-terms provision to be *one of several factors* supporting a finding of unconscionability and thus unenforceability. For instance, in *Ingle*, the Ninth Circuit found an *employment* arbitration agreement unenforceable on numerous grounds, including that it was one-sided (employer claims against employees were not subject to the agreement), it contained a loser-pays provision, and it precluded several types of relief that would be available in court, *in addition to* the fact that it allowed Circuit City to unilaterally modify the arbitration agreement. 328 F.3d at 1174–79. The *Ingle* court "dr[ew] no conclusion as to whether [the change-of-terms provision], by itself, renders the contract unenforceable." *Id.* at 1179 fn. 23. Similarly, in *Pokorny*, the Ninth Circuit found an agreement between a corporation and its distributors to be unenforceable for several reasons, such as the inclusion of a "first-peak" at claims provision, a truncated limitations period, mandatory confidentiality, fee-shifting provisions, and even a provision giving preference to arbitrators that had been trained by the defendant corporation itself, *in addition to* a provision reserving the right to change the terms of the agreement. 601 F.3d at 998–1004. As Defendant points out, "neither Washington courts nor the Ninth Circuit have ever held an arbitration agreement unenforceable solely because it is in a contract that allows changes. To rule otherwise would be to invalidate countless arbitration agreements across the country." (Defendant's Reply, Dkt. No. 41 at 1.)

Further, Washington and Ninth Circuit courts have a history of enforcing contracts containing change-in-terms provisions. *See e.g., Alaska Airlines, Inc. v.*

*Carey,* 395 Fed.Appx. 476, 479 (9th Cir. 2010) (holding that "Alaska Airline's unilateral right to modify the terms of the Mileage Plan do[es] not make the plan an illusory contract"). In Washington, a contract is illusory only if it lacks all consideration and mutuality of obligation, e.g., the promisor has *no* obligations with regard to *any* parts of the contract. *See e.g., Gress v. Conover Ins., Inc.,* 494 Fed.Appx. 772, 774 (9th Cir.2012) ("The fact that [defendant] retained the right to unilaterally modify the contract did not render the agreement illusory, because the performance obligations remained fixed."); *Quadrant Corp. v. Am. States Ins. Co.,* 154 Wash.2d 165, 184–85, 110 P.3d 733 (2005) (explaining that illusory contracts are those without any consideration). This is not the case here, where the contract between customers and Amazon created several performance obligations for Amazon, the alleged breach of which forms the basis of this suit. Thus, there is no binding legal authority compelling a finding that the reservation of the right to change the terms makes the COU/arbitration agreement unenforceable.

 Second, in addition to the absence of any elements making the agreement per se unconscionable, the arbitration agreement's terms hardly strike this Court as unfair. For instance, the arbitration agreement obliges Amazon to pay all arbitrator fees and costs for claims under $10,000, to unilaterally waive its claims for attorneys' fees, to submit to arbitration in any location chosen by the consumer, and also allows consumers to arbitrate by telephone or written submission. (*See* Motion to Compel Arbitration, Dkt. No. 24 at 5–6.) Arbitration is conducted not according to

---

For instance, in *In re Zappos.com, Inc.,* 893 F.Supp.2d 1058, 1063 (D.Nev.2012), which features very prominently in Plaintiffs' briefing, the unenforceable arbitration agreement

was forced on those plaintiffs through a "browsewrap" "agreement" which required absolutely no affirmative action on the part of consumers.

some rules created by Amazon, but rather by the American Arbitration Association's published and accessible rules. The external, neutral American Arbitration Association's arbitrators preside over the arbitration.

Third, this agreement misconstrues Defendant's demand for arbitration. Defendant is not arguing that the pre-August 2011 COU to which Plaintiffs agreed have been *changed* to include the arbitration agreement. Rather, Amazon argues that the *post*-August 2011 COU to which Plaintiffs agreed on numerous occasions, and which *have featured arbitration agreements from their inception,* bind Plaintiffs.[7] By arguing thus, Defendant renders its ability to change extant COU without notice irrelevant, as the COU upon which Amazon's Motion is based *were* presented to and agreed to by both Plaintiffs, each and every time they made a purchase after August 2011.[8]

The fact that Amazon did not, in fact, use its allegedly-unfettered power to change the terms to "alter[ ] the dispute resolution process after a dispute, or potential dispute, has arisen," (Plaintiffs' Response, Dkt. No. 38 at 15), renders Plaintiffs' remaining validity arguments irrelevant. Plaintiffs' lack-of-savings-clause argument (*id.* at Section III(C)(3)) is moot. Further, as Amazon points out, such reservation of terms-changing rights is in fact "fettered" and restricted by the universal requirements of good faith and fair dealing. Plaintiff's failure to provide

notice of a change of terms argument (*id.* at Section III(C)(4)) is likewise moot, at the point that Amazon is basing its Motion on the *unchanged* COU to which Dr. Ekin assented after August 2011. The failure of Plaintiffs' arguments along these lines is supported by this District's decision in *L.A. Fitness International, LLC v. Harding,* in which Judge Bryan rejected the similar claims of those plaintiffs and held that when a defendant seeks to enforce an arbitration agreement that has not been changed, a challenge on the basis of unconscionability due to change-in-terms provisions is irrelevant, because the never-invoked change-in-terms provision can be severed, allowing the rest of the contract and agreement to stand. 2009 WL 4545079 at *4 (W.D.Wash., Nov. 25, 2009). Finally, the fact that Amazon bases its Motion on the COU to which Dr. Ekin affirmatively assented discredits Plaintiffs' argument that Amazon did not secure meaningful consent. (*See* Plaintiffs' Response, Dkt. No 38 at 22.)

■ Plaintiffs' alternate argument against the validity of the arbitration agreement is that Amazon's failure to attach and specify the relevant arbitration rules makes the agreement unenforceable for ambiguity. (Plaintiffs' Response, Dkt. No. 38 at 18–20.) However, the Court fails to see how Amazon's reference to the AAA's rules is at all ambiguous. The arbitration agreement provides that "[t]he arbitration will be conducted by the Ameri-

---

7. "Amazon did not change either agreement to impose arbitration on Plaintiffs or to change the terms of arbitration. Rather, Plaintiffs agreed to arbitration each time they accepted the COU anew—more than 300 times in all." (Defendant's Reply, Dkt. No. 41 at 1.) Plaintiffs' arguments that there was no affirmative agreement to arbitrate (*id.* at Section III(A)) are not well-founded, given that Plaintiffs offer no theory for rejecting Amazon's assertion that Plaintiffs accepted

the arbitration agreement every time they made a purchase subsequent to August 2011.

8. In doing so, Defendant implicates questions of the scope of the post-August 2011 agreement and its ability to cover pre-August 2011 transactions. However, this Court finds that Amazon fulfills the second prong *Chiron* inquiry as well, for the reasons discussed in the ensuing section.

can Arbitration Association (AAA) under its rules, including the AAA's Supplementary Procedures for Consumer–Related Disputes." (Ressmeyer Decl., Dkt. No. 25, Ex. E at 24.) The agreement provides the AAA's website and a toll-free telephone number, so that customers may obtain the governing rules. (*Id.*) Plaintiffs' description of the convolution, disorganization, and obstacles endemic to the AAA's website are not convincing.

Thus, Plaintiffs have presented this Court with no reasons for holding the arbitration agreement invalid.

### C. The Scope of Amazon's Arbitration Agreement

 Amazon's arbitration agreement encompasses "any dispute or claim relating in any way to your use of any Amazon Service, or to any products or services sold or distributed by Amazon or through Amazon.com." (Ressmeyer Decl., Dkt. No. 25, Ex. E at 24.) Plaintiffs do not meaningfully contest that this phrasing encompasses disputes arising from both future *and past* transactions on Amazon.com. Nor could they, consistently, given the prevailing law. As Defendant points out, Chief Judge Pechman of the Western District of Washington held one year ago that a similarly worded arbitration provision of Amazon was "plainly not limited to prospective disputes." *Peters*, 2 F.Supp.3d at 1173. This District's ruling is amply supported by Ninth Circuit precedent [9] and the decisions

of sister circuits holding specifically that when arbitration agreements contain broad "relating to any dispute" language, both future and past disputes are included in the scope of the arbitration agreement.[10]

Thus, the instant Prime–FBA price dispute, even though stemming from transactions occurring prior to August 2011, is within the scope of the post-August 2011 arbitration agreement that this Court found valid in the preceding section, and to which Plaintiffs agreed. The arbitration agreement having fulfilled both prongs of the *Chiron* test, this Court must conclude that arbitration is mandated.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration (Dkt. No. 24) is GRANTED. The parties are directed to submit their claims to arbitration. In light of this Order, Amazon's Motions to Dismiss (Dkt. No. 23 & 27) are stricken as moot.

---

9. *See e.g., Chiron Corp.*, 207 F.3d at 1131 ("any dispute" provisions are "broad and far reaching" in scope).

10. *See e.g., Levin v. Alms & Assoc., Inc.*, 634 F.3d 260, 267–68 (4th Cir.2011) ("[C]ourts have generally applied broad 'any dispute' language retroactively, especially when combined with language that refers to all dealings between the parties."); *TradeComet.com, LLC v. Google, Inc.*, 435 Fed.Appx. 31, 34–35 (2d Cir.2011) ("[C]ourts have found claims aris-

ing from or related to conduct occurring before the effective date of an arbitration clause to be *within* the scope of a clause that is not limited to claims arising under the agreement itself."); *Kristian v. Comcast Corp.*, 446 F.3d 25, 33 (1st Cir.2006) (arbitration agreement applying to any claims "relating to or arising out of this agreement or the services provided" was applied retroactively because "the phrase 'or the services provided' ... [is] not limited by the time frame of the agreements").