**Dissenting Opinion Filed February 24, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

---

### No. 05-20-00015-CV

---

## IN RE BABY DOLLS TOPLESS SALOONS, INC. AND BURCH MANAGEMENT COMPANY, INC., Relators

---

**Original Proceeding from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-00644**

---

## DISSENTING OPINION
Opinion by Justice Schenck

I dissent from the denial of relators Baby Dolls Topless Saloons, Inc. and Burch Management Company, Inc.'s Petition for Writ of Mandamus seeking to compel arbitration and requesting an order staying the underlying proceeding. For the reasons set forth herein, I would stay the underlying proceeding, request a response from respondent and real parties in interest, and, subject to the responses, I would be inclined to grant the petition and order that the case be resolved by arbitration.

### FACTUAL BACKGROUND

Stephanie Sotero Hernandez, now deceased, was once an entertainer at Baby Dolls Saloon (the "Club"). In connection with that engagement, she entered into a

License and Lease Agreement with the Club. That agreement is dated March 24, 2017, and contains a binding arbitration provision that provides that any disputes arising during Hernandez's relationship with the Club must be decided by binding arbitration held pursuant to the Federal Arbitration Act (FAA). It is alleged in the underlying dram shop lawsuit that Hernandez and Mayra Salazar, another Baby Doll Saloon entertainer,[1] were working at the Club on or about January 4 and 5, 2019, and that relators served alcohol to Salazar at the Club when it was apparent that she was intoxicated and presented a clear danger to herself and others. Hernandez and Salazar left the premises on January 5 in a vehicle driven by Salazar, and Hernandez was killed when Salazar lost control of the vehicle and crashed.

The purported representatives of Hernandez's estate, and the next friend of Hernandez's daughter, sued relators, and others, asserting various wrongful death and survival claims deriving from the death of Hernandez.

### PROCEDURAL BACKGROUND

On April 8, 2019, relators moved to compel arbitration urging that any claims of the real parties in interest are derivative of Hernandez's rights and are subject to arbitration pursuant to the License and Lease Agreement. As relevant here, relators urge the claims asserted against them are subject to the broad arbitration clause, which provides:

---

[1] Salazar signed a License and Lease Agreement with Baby Dolls Saloon that contains the same arbitration provisions as Hernandez's agreement.

[T]his Agreement is subject to binding arbitration pursuant to the Federal Arbitration Act (the "FAA"), and any disputes under this Agreement, as well as any disputes that may have arisen at any time during the relationship between the parties, including but not limited to under any Federal or State law, will be governed and settled by an impartial independent arbitrator appointed by the American Arbitration Association (the "AAA"), Texas branch, and the determination of the arbitrator shall be final and binding (except to the extent there exist grounds for vacation of an award under applicable arbitration statutes). . . . This Agreement shall apply to claims or disputes that are asserted by either party [to the agreement] against third parties [such as relators] when the basis of such dispute or the claims raised . . . are, or arise from disputes that are required to be arbitrated under this Agreement.[2]

The trial court denied relators' motion to compel arbitration on November 1, 2019.

Relators filed a notice of appeal on November 22, 2019. That accelerated appeal has not yet been assigned to a panel that will decide its merits. On December 9, 2019, relators filed a Motion for an Immediate Stay of All Proceedings in the Trial Court Pending Appeal. A panel of this Court that decides motions, but not the merits, denied the motion for stay without prejudice on January 3, 2020. On January 6, 2020, relators filed their Petition for Writ of Mandamus, which has been assigned to this panel that decides writ applications but not the merits. At the end of the day, no less than three panels will have touched this file to address the legal question of whether the relators are entitled to a stay pending arbitration. Unfortunately, we are

---

[2] While relators also object to being sued at all, their request for arbitration points to the following language making clear the arbitration clause will "appl[y] to claims made against . . . any alleged joint actors, or based on any legal theory, claim or right that a third party is liable for the actions or obligations of a party to this Agreement."

not in a position to expeditiously resolve these core issues in this case, and the attendant stay issue in my view must be addressed by mandamus at this stage.

## DISCUSSION

### I.     Stay of the Underlying Proceedings

Although it appears the FAA governs the enforceability of the arbitration clauses involved in this case, we apply Texas procedural law such as that found in Texas Civil Practice & Remedies Code Chapter 171, *to the extent* it is in harmony with like provisions in the FAA. *See In re Houston Pipe Line Co.*, 311 S.W.3d 449, 450 (Tex. 2009) (orig. proceeding) (per curiam); *Tantrum St., LLC v. Carson*, No. 05-16-01096-CV, 2017 WL 3275901, at *8 (Tex. App.—Dallas July 25, 2017, orig. proceeding) (mem. op.).   Where Texas procedure conflicts with the goals and policies of the FAA, it is pre-empted. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 779 (Tex. 2006) (orig. proceeding).

Subchapter B of Chapter 171 governs proceedings to compel or stay arbitration in Texas courts. TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.021–.026. Section 171.025 provides:

> The court *shall* stay a proceeding that involves an issue subject to arbitration if an order for arbitration *or* an application for that order is made under this subchapter.

–4–

*Id.* § 171.025 (emphasis added).[3]

This provision imposes a mandatory, non-discretionary duty to stay the proceeding when the court orders arbitration *or* an application for that order has been made. Section 171.025 does not specify which "court" is obligated to stay the proceeding and I find no authority limiting the scope of the term "court" as it is used in that section to only the trial court excluding appellate courts. One might argue, for instance, that section 171.025 mandates a stay in and by the trial court only while that court is considering the application in the first instance. Of course, one might also read the "application" to include the interlocutory appeal to this Court, leaving the question of whether under the statute this Court is also obliged to recognize the stay as a non-discretionary matter. For reasons detailed below, I believe the FAA would preempt any reading that would leave the case proceeding in the trial court. In order to avoid that Supremacy Clause question, I would read our statute to avoid the conflict with the FAA, making a stay immediately available in whichever court the application is made, subject to being lifted if the application is frivolous. *Fed. Sav. & Loan Ins. Co. v. Glen Ridge I Condos*, 750 S.W.2d 757, 759 (Tex. 1988). In all events, to the extent section 171.025 can be read to apply solely to the trial court, it is inconsistent with federal law, at least as it is informed, if not compelled, by the FAA. *See In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 780 (Tex. 2006) (orig.

---

[3] The Texas Supreme Court has determined that Texas's mandatory stay provision is not inconsistent with the FAA. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 780 (Tex. 2006) (orig. proceeding). Accordingly, the FAA does not pre-empt the application of section 171.025.

proceeding) (citing *Jack B. Anglin Co. v. Tipps*, 842 S.W.3d 266, 271 (Tex. 1992) (orig. proceeding) (FAA preempts state statutes to the extent they are inconsistent with that Act).

In the federal system, the stay is automatic upon the filing of an appeal from a ruling on a motion to compel arbitration; no further action is necessary. In order to avoid the need for motion practice, federal circuits have held the notice of appeal to divest the district court of further jurisdiction over those claims, as long as the appeal is not frivolous. *See Levin v. Alms & Assoc., Inc.*, 634 F.3d 260, 263 (4th Cir. 2011). As Judge Easterbrook explained, section 16 of the FAA, by which interlocutory appeals of anti-arbitration orders are allowed, supplanted the prior contrary federal appellate practice because continuation of proceedings in the district court largely defeats the entire point of arbitration and continuation of the proceedings below creates a risk of inconsistent handling of the case by two tribunals. *Bradford–Scott Data Corp. v. Physician Comput. Network*, 128 F.3d 504, 505 (7th Cir. 1997). This rationale is obvious and supported by the notion that "arbitration clauses reflect the parties' preference for a *non-judicial* dispute resolution." *Id.* "These benefits are eroded, and may be lost or even turned into net losses, if it is necessary to proceed in both judicial and arbitral forums, or to do this sequentially." *Id.* Our rules of appellate procedure make the same point as a global matter by authorizing trial courts to proceed—at all—pending an interlocutory appeal where doing so is in keeping with statutes like Civil Practice & Remedies

Code § 171.025, and by specifically prohibiting an action that "impairs . . . effectiveness of any relief sought or that may be granted on appeal." TEX. R. APP. P. 29.5. As the entire point of this appeal is to avoid the costs and delay associated with the proceeding in the district court in the first place, it is difficult to imagine how we could unwind the clock later to un-litigate those matters. Likewise, preserving the parties' rights in the interim is a matter for this Court, not the trial court, while this appeal is pending. *Id.* 29.4.

Most of the federal circuits that have addressed this issue have agreed with Judge Easterbrook and the result apparently dictated by our statute and rules. *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 215 n.6 (3d Cir. 2007)*; McCauley v. Halliburton Energy Servs., Inc.*, 413 F.3d 1158, 1162–63 (10th Cir. 2005); *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1253 (11th Cir. 2004); *Levin*, 634 F.3d at 262. The Fifth Circuit limits the automatic stay to the "aspects of the case involved on the appeal" with a broader stay subject to the usual case-by-case application of the discretionary stay factors. *Weingarten Realty Inv'rs v. Miller*, 661 F.3d 904, 908–10 (5th Cir. 2011); *Grant v. House*, 469 Fed. App'x 310, 314 (5th Cir. 2012).

Of course, neither side of the docket has monopolized the weapon of frivolous motion practice. Federal courts applying the FAA and recognizing the automatic stay have allowed it to be lifted on a showing that the appeal is frivolous, *e.g., Levin*, 634 F.3d at 265, or by a summary disposition of the appeal by the panel assigned to

hear it, e.*g., Ecolab, Inc. v. Gardner Mfg. Co.*, 56 Fed. App'x 484, 485–86 (Fed. Cir. 2003).

Were we to adopt the federal practice, we might have authority to lift the stay if the request to refer the case to arbitration was frivolous. Unfortunately, owing to this Court's case assignment protocol, no panel has yet been assigned to determine the merits of relators' interlocutory appeal. While our current structure may leave this Court less able than others to address the rare potential abuse of the stay federal law appears to command, I do not believe that should operate to deny the stay and leave this case open for continuing litigation below in the face of the mandatory language of section 171.025 and the federal law that informs (or potentially preempts) its construction. In the meanwhile, despite the presence of what appears to be a non-frivolous arbitration request, this case appears to be proceeding in two courts, neither of which is presumably proper for its resolution under the FAA.

Until our supreme court speaks to this question directly, we are left to interpret our statute and the FAA as we find them. As explained above, I would find a stay to be mandatory and non-discretionary with the first court asked, subject to expedited merits review or lifting of the stay by the merits panel assigned to decide the case pending its final opinion. In all events, I believe that a stay is essential under either Texas law or the FAA if the arbitration bargain is to have its intended effect. I also believe that the FAA would compel it to the extent Texas law does not, at least

in all appeals that are not shown to be frivolous. As this appeal is not frivolous, I would grant the stay in this mandamus proceeding.

## II. Arbitration

Based on the limited record before us, it appears that the arbitration provisions relators rely upon are extremely broad and may well cover the claims asserted by real parties in interest. *See e.g., Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 520 (Tex. 2014); *see also Seven Hills Commercial, LLC v. Mirabal Custom Homes, Inc.*, 442 S.W.3d 706, 715 (Tex. App.—Dallas 2014, pet. denied) (an obligation to arbitrate may attach to non-signatory under principles of contract and agency law and question of who is bound by arbitration agreement is a function of the intent of parties, as expressed in the terms of agreement). Moreover, it appears an arbitrator, rather than the district court, is to determine questions of arbitrability in this case.[4] *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract"); *Rent-A-Center, West, Inc., v. Jackson*, 561 U.S. 63, 68–69 (2010) (parties can agree to arbitrate "gateway" questions of "arbitrability," such as whether

---

[4] The License and Lease Agreement provides:

> The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to, any claim that all or any part of this Agreement is void or voidable.

parties have agreed to arbitrate or whether their agreement covers a particular controversy); *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 120 (Tex. 2018) (parties have right to contract as they see fit, they may agree to arbitral delegation clauses that send gateway issues such as arbitrability to the arbitrator). Notwithstanding the foregoing, as indicated *supra*, I would seek a response before reaching a definitive conclusion concerning the arbitration issues raised by relators. Moreover, I would be inclined, in cases such as this one, to hear oral argument, which is often helpful to the parties and the Court. At present, it should suffice to say that the relators have shown, so far as I am concerned, a probability of success on the merits sufficient to warrant a stay even if it were not compelled by law.

## III.    Response to Majority

The majority appears to misperceive the concern I raise with respect to delay. Specifically, I agree that the majority has acted promptly on the instant petition and will surely continue to do so. My concern is with the period of time between the filing of an appeal from an order denying a request for arbitration and its submission to a panel with authority to dispose of it on the merits. Our internal case processing system could result in delay that would be capable of exploitation by a party bringing a frivolous request for arbitration so as to exploit the stay created by the rules that we are not well positioned to address. As this case does not involve such a frivolous request, I need not further dwell on that concern.

–10–

I find myself less able than the majority to fault relators' decision to bring the instant mandamus proceeding or for failing to return to our motions panel to press what would be a *fifth* request to stay the proceedings pending resolution of its request to enforce the arbitration clause. To begin, the Rules of Appellate Procedure address the "Determination of Motions" in rule 10.3 and permit motions to reconsider only where the court acts prior to the expiration of ten days from the original filing. Even if those rules could be construed to authorize a different local practice, nothing in our local rules even purports to acknowledge the existence of the motions panel, much less authorize a reconsideration request. *See* TEX. R. APP. P. 1.2 (authorizing local rules "not inconsistent with these rules" and that are "first approved by the Supreme Court"). And, of more immediate relevance, nothing in our rules purports to authorize a motions panel to take any action in a case, including the instant mandamus proceeding, after it has been submitted for decision.

I agree with my colleagues that the question in this mandamus proceeding is whether the remedy provided by the appeal of the denial is adequate. I would find that appeal adequate if it were enforced as the legislature intended by, for example, tracking the federal practice under the statute the legislature cited in authorizing the appeal. CIV. PRAC. & REM. § 51.016 (authorizing an appeal "under the same circumstances that an appeal from a federal . . . court's . . . decision would be permitted under 9 U.S.C. § 16"). As noted, the federal authorities applying that statute have found proceedings in the district court pending the appeal incompatible

–11–

with the nature of the appellate controversy and the remedy sought. *Barford-Scott*, 128 F.3d at 505 ("An appeal authorized by § 16(a)(1)(A) presents the question whether the district court must stay its own proceedings pending arbitration. Whether the litigation may go forward in the district court is precisely what the court of appeals must decide."). While our own statute and rules appear to compel the same result by dictating a stay of the overlapping proceedings of whatever court is first asked, we have not done so here. Accordingly, relator has properly brought the issue before us for mandamus relief that should be available under long recognized mandamus standards and without the need of further machination or a fifth request for stay. *CMH Homes v. Perez*, 340 S.W.3d 444, 452 (Tex. 2011); *In re Champion Tech.*, 173 S.W.3d 595, 599 (Tex. App.—Eastland 2005, orig. proceeding).

## CONCLUSION

Under the facts of this case, and given the delay occasioned by our case assignment regime, I would grant relators' request for a stay, in connection with their mandamus petition, and immediately enter an order staying the underlying proceeding pending further order of this Court or the resolution of an arbitration proceeding, if ultimately the case is sent to arbitration. As the issue presented here is important and recurring, I believe clarification from the Supreme Court would be helpful.

For the foregoing reasons, I respectfully dissent from the denial of relators'

Petition for Writ of Mandamus.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

200015DF.P05